UNITED STATES of America,
Plaintiff–Appellant,

v.

David Leon SMITH,
Defendant–Appellee.

No. 89–2346.

United States Court of Appeals,
Sixth Circuit.

Argued May 11, 1990.

Decided Aug. 6, 1990.

David Debold (argued), Amy B. Hartmann, Office of the U.S. Atty., Detroit, Mich., for plaintiff-appellant.

Jill L. Price (argued), Rafael C. Villarruel, Federal Public Defenders Office, Detroit, Mich., for defendant-appellee.

Before WELLFORD and BOGGS, Circuit Judges, and DOWD *, District Judge.

PER CURIAM.

Plaintiff–Appellant United States of America ("the government") appeals from a sentence imposed pursuant to the Sentencing Guidelines ("the guidelines") following the conviction of defendant David Leon Smith ("Smith") for violating 26 U.S.C. § 5861(d), possession of an unregistered sawed-off rifle. 18 U.S.C. § 3742(b), and in particular § 3742(b)(2), authorizes the United States to prosecute an appeal from a sentence imposed in a criminal case upon the claim that the district court incorrectly applied the guidelines.[1] In this appeal, the government contends that the district court failed to determine correctly the offense level arising from the defendant's conviction for possession of an unregistered sawed-off rifle. For the following reasons, Smith's sentence is vacated and we remand this matter for a redetermination of Smith's sentence.

I.

A threshold question was presented by the absence of any showing in the record at the time of oral argument that either the Attorney General or the Solicitor General had given personal approval to the government's appeal in this case as required by 18 U.S.C. § 3742(b).[2] Another panel of this court has indicated in *dicta* that the government is required to file,

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1. 18 U.S.C. § 3742(b) provides in relevant part:
   (b) *Appeal by the Government.*—The Government, with the personal approval of the Attorney General or the Solicitor General, may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

   (2) was imposed as a result of an incorrect application of the sentencing guidelines;

2. Oral argument was conducted on May 11, 1990. On May 17, 1990, written evidence of the Solicitor General's personal approval, dated November 24, 1989, was filed with the Clerk of this Court. The notice of appeal was filed November 27, 1989. Appendix ("App."), at 27.

perhaps with its notice of appeal, a document demonstrating such personal approval. *See United States v. Hays,* 899 F.2d 515, 517 n. 1 (6th Cir.1990). Two unpublished decisions by panels of this court have declared that the court lacks appellate jurisdiction when no written authorization of the Solicitor General or Attorney General is filed. *United States v. Bogas,* No. 90–3228, slip op. at 1 (6th Cir. April 12, 1990) [899 F.2d 1222 (table)]; *United States v. Gomez,* Nos. 89–1464/1465, slip op. at 4 n. 1 (6th Cir. May 2, 1990) [902 F.2d 1570 (table)].

In *United States v. Gurgiolo,* 894 F.2d 56 (3rd Cir.1990), a contrary position on the issue of jurisdiction has surfaced. The Third Circuit likened failure to document the personal approval requirement to an error in the caption of the pleadings on appeal, from which "an appeal shall not be dismissed for informality of form or title of the notice of appeal." *Gurgiolo,* at 57 n. 1, citing Fed.R.App.P. 3(c).

The legislative history of the Comprehensive Crime Control Act of 1984 [3] demonstrates the firm belief that the provision for government appeals from guideline sentencing was imperative to reduce the specter of unwarranted sentencing disparity. S.Rep. No. 98–225, 98th Cong., 1st Sess. 151 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3334. Although the government's right to appeal was considered essential, the government must obtain the personal approval of the Attorney General or the Solicitor General to file an appeal "in order to assure that appeals by the government would not be routinely filed for every sentence below the guidelines." S.Rep.No. 98–225, 98th Cong., 1st

Sess. 154 (1983), *reprinted in* 1984 U.S. Code Cong. & Admin.News 3337.

■ Section 3742(b) does not require the personal approval of the Attorney General or Solicitor General to be in writing or that the approval be filed in the Court of Appeals. However, it is undisputed that Congress intended that such permission be obtained.

It is the view of this panel that proof of the personal approval is not of jurisdictional dimensions in the sense that a timely notice of appeal in a criminal case is jurisdictional. *See* Fed.R.App.P. 4; *Gurgiolo, supra.* However, in the absence of statutory or rule pronouncements, this court will impose by the exercise of its supervisory authority, prospectively, the requirement that written proof of the personal approval of either the Attorney General or Solicitor General be provided no later than the filing of the government's appellate brief and that the personal approval be dated no later than the day on which the notice of appeal was filed by the government.

## II.

Smith entered a plea of guilty to the charge of possession of a sawed-off rifle and was sentenced to a term of sixteen months following the district court's ruling that the adjusted offense level was ten and the criminal history category was III providing a sentencing range of ten to sixteen months.[4]

The parties agree that the base offense level as established by U.S.S.G. § 2K2.2(a) is twelve. The government contends that § 2K2.2(a) is not the correct guideline to be applied to Smith and that Smith's base offense level should be increased to level

---

**3.** The Comprehensive Crime Control Act of 1984 passed both houses of Congress without an all-inclusive legislative report. The final Senate Judiciary Committee Report provides key evidence of Congress's legislative intent for the "personal approval" requirement. S.Rep. No. 98–225, 98th Cong., 1st Sess. 1 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182 *et seq.*

**4.** The parties entered into a written plea agreement. It included the government's worksheet on the application of the guidelines to the defen-

dant's conviction and demonstrated the government's contention that the adjusted offense level was seventeen based upon a base level of fifteen for the enhanced offense of aggravated assault with an additional four levels for the use of a dangerous weapon and a reduction of two levels for acceptance of responsibility. The worksheet computed a criminal history category of III with a resulting sentencing range of thirty to thirty-seven months. The plea agreement included a sentencing cap of thirty months. App., at 13.

fifteen because Smith allegedly engaged in aggravated assault, contemporaneously with his possession of the sawed-off rifle, by striking a Dennis Scott with the rifle and then firing several shots as Scott fled from Smith.[5]

■ In arguing that aggravated assault is the correct guideline offense, the government relies upon the cross reference to § 2K2.2(a) found at § 2K2.2(c), which provides that where the defendant used the firearm in committing another offense, the court should apply the guideline for the other offense if the resulting offense level is higher. The government contended that as the offense level for aggravated assault (U.S.S.G. § 2A2.2) is fifteen, the base offense level should have been increased to fifteen rather than remaining at twelve.

The district court rejected the enhancement argument of the government with the observation that the cross reference provisions of § 2K2.2 apply only to a federal offense of aggravated assault and not to a state offense of aggravated assault. We disagree.

Congress intended that the guidelines would bring honesty, uniformity and proportionality to sentencing in the federal system. To achieve the goal of proportionality, the guidelines require consideration and application of relevant conduct. U.S.S.G. § 1B1.3 provides, in substance, that the base offense level, adjustments required by specific offense characteristics and any cross reference to Chapter Two shall be determined by considering:

All acts and omissions committed by ... the defendant ... that occurred during the commission of the offense.

The guidelines, as promulgated, are supplemented by commentary. U.S.S.G. § 1B1.7, entitled Significance of Commentary, states in part:

The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the guideline or explain how it is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. *See* 18 U.S.C. § 3742.

The commentary that follows § 1B1.7 states:

In stating that failure to follow certain commentary "could constitute an incorrect application of the guidelines," the Commission simply means that in seeking to understand the meaning of the guidelines courts likely will look to the commentary for guidance as an indication of the intent of those who wrote them. In such instances, the courts will treat the commentary much like legislative history or other legal material that helps determine the intent of a drafter.

Against that background, we turn to an examination of the applicable guidelines within Chapter Two which deal with offense conduct as it relates to Smith's conviction and sentence.

At the time the district court sentenced Smith, U.S.S.G. § 2K2.2 provided the applicable range for possession of an unregistered short-barrel rifle in violation of 26 U.S.C. § 5861(d).[6] Section 2K2.2(a) specified a base offense level of twelve for

**5.** The Presentence Report contains the following paragraph:

> 12. Apparently defendant held the victim responsible for his recent eviction. According to the victim in his affidavit, on June 13, 1989, defendant came to the back of the victim's house and called for him to come outside. When he went outside, the victim saw that defendant was carrying an Uzi-type weapon. Defendant then began pushing and kicking the victim. He struck the victim in the mouth with his fist and then on the top of the head with the butt of the gun. Defendant then directed the victim to start walking. The victim began to run

across a field, and the defendant started shooting. Defendant chased the victim and began firing shots from the corner of Warren and Tillman. While in hiding, the victim saw defendant go inside his house from where he heard another gunshot.
Presentence Report at 5, App., at 33.

**6.** On November 1, 1989, the United States Sentencing Commission modified the guidelines for firearm offenses. The Sentencing Commission consolidated the two former guidelines § 2K2.1 and § 2K2.2 (felon-in-possession and possession of unregistered weapons) into one guideline and raised the base offense level for each offense. *See* U.S.S.G. § 2K2.1 (November 1989). We do

possession of firearms in violation of the National Firearms Act. In this case, none of the specific offense characteristics is applicable, but the cross reference, § 2K2.2(c) directs that if the defendant used a firearm in committing or attempting to commit another offense, the guideline for such offense is to be followed if the guideline for such other offense calls for a greater offense level. The guidelines for offense conduct include aggravated assault (§ 2A2.2) and impose a base offense level of fifteen, citing as statutory examples, 18 U.S.C. §§ 111, 112, 113(b), 113(c), 113(f), 114, 115(a), 115(b)(1), 351(e) and 1751(e). The commentary for § 2A2.2 defines "aggravated assault" as "a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (*i.e.*, not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit another felony."

The commentary to § 2K2.1 is relevant on the issue of whether the "other offense" designation in § 2K2.2(c)(1) must be a federal offense as held by the district court. The commentary also deals with the commission of firearm offenses and states in part:

> The firearm statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law. For example, a convicted felon may be prosecuted for possessing a firearm if he used the firearm to rob a gasoline station. Such prosecutions result in high sentences because of the true nature of the underlying conduct. The cross reference at § 2K2.1(c) deals with such cases.

Although the commentary to § 2K2.2 does not make specific reference to state offenses as contained in the § 2K2.1 commentary, it does state that the cross reference subsection 2K2.2(c)(1) "refers to any situation in which the defendant possessed a firearm to facilitate another offense that he committed or attempted."

An aggravated assault enhancement of a sentence for a firearm conviction was af-

firmed in *United States v. Shinners*, 892 F.2d 742 (8th Cir.1989) and in *United States v. Perez*, 897 F.2d 751 (5th Cir.1990). In *Shinners, supra*, the defendant was convicted of one count of possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Shinners was confronted by store employees suspecting him of shoplifting. A struggle ensued and Shinners fired a .357 magnum revolver. The Eighth Circuit affirmed the district court's ruling that Shinners's conduct, for guideline sentencing purposes, constituted aggravated assault. In *Perez, supra*, the defendant was convicted of possession of a firearm by a felon and other firearm offenses. Perez was arrested after police officers responded to the report of a shooting between persons in Perez's vehicle and persons in another vehicle. In neither *Shinners* nor *Perez* is there any indication that the aggravated assault found by the district court was in violation of a federal statute.

We hold that the district court erred in finding that the cross reference in § 2K2.2(c)(1) applied only to federal crimes. The language of the guideline, the policy behind the guidelines, the commentary to other related guidelines, the definition of relevant conduct and the other cases that have considered the question all indicate that the cross reference applies to state as well as federal offenses. Accordingly, the sentence imposed is vacated and this case is remanded for a reconsideration of Smith's sentence.

■ We remand because the defendant may well have committed the guideline offense of aggravated assault as defined in § 2A2.2. *See supra* p. 330. However, it remains for the district court to determine whether the conduct engaged in by Smith constituted what the government claims to be aggravated assault. With a few exceptions, the federal offenses of aggravated assault cited in the commentary to § 2A2.2 are also cited for the purpose of defining the separate offense of minor assault in the commentary to § 2A2.3. When deciding whether the guidelines' offense was aggra-

not apply this amendment herein since Smith was sentenced prior to the effective date. 18

U.S.C. § 3553(a)(4).

vated assault or minor assault, a district court should consider whether the conduct satisfied the commentary's definition of an aggravated assault. Those offenses listed as aggravated assault offenses but not minor assault offenses inherently include the same aggravating factors that would lead to a finding of a 2A2.2 offense of aggravated assault, *e.g.*, assault with the infliction of serious bodily injury, 18 U.S.C. § 111 and § 114, 18 U.S.C. § 113(f); assault with intent to commit a felony, 18 U.S.C. § 113(b); and assault with a dangerous weapon with intent to do bodily harm and without just cause or excuse, 18 U.S.C. § 113(c).

Although state statutes dealing with assault are diverse in the four states that constitute the Sixth Circuit,[7] the statutes in general create a more serious type of assault that includes such common elements as inflicting serious bodily harm or inflicting or attempting to inflict bodily harm with a dangerous weapon. The definition of aggravated assault in § 2A2.2 carries the same basic elements. However, to the extent the federal guidelines' sentencing definition of an aggravated assault and the various state assault offenses do not coincide, the district court shall apply the federal definition. For example, the guidelines' definition of an aggravated assault offense does not match the Michigan offense of felonious assault, Mich.Comp. Laws Ann. § 750.82.[8] The commentary to § 2A2.2 excludes from the offense of aggravated assault the use of a dangerous weapon where the intent was merely to frighten. In Michigan, the offense of felonious assault appears to be more inclusive than the federal standard in that use of a weapon with intent to frighten falls within the category of felonious assault. On remand, the district court must apply the

guidelines' definition of aggravated assault to determine whether a state assault offense as applied to a defendant's conduct falls within the guidelines' parameters as the base offense of aggravated assault.[9]

Thus, in order for the government to prevail in its argument that the base offense level must be increased to the base offense level of fifteen for aggravated assault, the government will need to establish by the requisite proof that Smith either used a dangerous weapon with intent to do bodily harm and not merely to frighten, or inflicted serious bodily injury or possessed the intent to commit another felony. *See* Commentary to § 2A2.2.

For the foregoing reasons, the sentence imposed is VACATED and this case is REMANDED for further consideration of Smith's sentence consistent with this opinion.

---

7. In Michigan, *see* Mich.Comp.Laws Ann. §§ 750.81 to .90 (West 1968 & Supp.1990). In Ohio, *see* Ohio Rev.Code Ann. §§ 2903.11 to .31 (Anderson 1987 & Supp.1989). In Kentucky, *see* Ky.Rev.Stat.Ann. §§ 508.010 *et seq.* (Baldwin 1989). In Tennessee, *see* Tenn.Code Ann. §§ 39–13–101 to 13–103 (Supp.1989).

8. Mich.Comp.Laws Ann. § 750.82 provides

Sec. 82. FELONIOUS ASSAULT—Any person who shall assault another with a gun, revolver,

knife, iron bar, club, brass knuckles or other dangerous weapon, but without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be guilty of a felony.

9. The government alleges that Smith's conduct constituted a violation of Mich.Comp.Laws Ann. § 750.84, assault with intent to do great bodily harm less than murder. Appellant's Brief at 12–13 n. 10.