**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Jackie D. LONG, Robert F. Money, Defendants–Appellees.**

**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Keith A. GRIFFIN, Defendant–Appellee.**

**Nos. 89–3942, 89–4007.**

United States Court of Appeals, Eleventh Circuit.

Aug. 28, 1990.

Stephen P. Preisser, Asst. U.S. Atty., Pensacola, Fla., James P. Turner, Acting Asst. Atty. Gen., Dennis J. Dimsey, Louise A. Lerner, Civ. Rights Div., Dept. of Justice, Washington, D.C., for U.S.

Joel C. Fanning, Pensacola, Fla., for Keith Griffin.

Stephen E. Sutherland, Pensacola, Fla., for Jackie D. Long.

Before JOHNSON, HATCHETT and BIRCH, Circuit Judges.

JOHNSON, Circuit Judge:

This case comes to us on defendant Griffin's motion to dismiss the government's appeal.

## FACTS

The defendants, Keith Griffin, Jackie Long and Robert Money ("the defendants"), pled guilty to conspiracy to interfere with civil rights after they were indicted for burning a cross in front of a black family's home. The district court sentenced Long and Money on October 6, 1989, and Griffin on October 27, 1989. The district court rejected the government's argument that the defendants' sentences should be enhanced under the Sentencing Guidelines. *See* United States Sentencing Commission, *Guidelines Manual* § 2H1.2. Accordingly, the district court found that the defendants' offense level was thirteen, rather than seventeen as the government urged.

The government appeals the sentence under 18 U.S.C.A. § 3742. In accordance with the approval requirements of Section 3742, the government recommended appeals of Long's and Money's sentences to the Solicitor General on November 2, 1989.[1] The November 2 request did not ask for permission to appeal Griffin's sentence because the transcript from Griffin's sentencing hearing was not yet complete. The November 2 request was accompanied by a memorandum outlining the facts of the case, the district court's ruling, and the issues for the proposed appeal against each defendant, including Griffin. The Solicitor General signed an authorization slip for appeal of Long and Money's sentences on November 6, 1989. On November 15, 1989, after reviewing the sentencing transcript in Griffin's case, the government submitted a second memorandum to the Solicitor General, asking for permission to appeal Griffin's sentence. The Deputy Solicitor General, acting on behalf of the Solicitor General, signed an authorization slip for appeal of Griffin's sentence on November 17, 1989.[2]

## ANALYSIS

Griffin now moves to dismiss the government's appeal, arguing that under section

---

1. 18 U.S.C.A. § 3742(b) provides in part: "Appeal by the Government.—The Government, with the personal approval of the Attorney General or the Solicitor General, may file a notice of appeal in the district court for review of an otherwise final sentence...."

2. The Solicitor General was in San Francisco attending a conference at the time that the Deputy Solicitor General signed the authorization slip on the Solicitor General's behalf.

3742(b)'s requirement that the government obtain personal approval of appeals from the Attorney General or the Solicitor General, the Deputy Solicitor General's approval of the present appeal is invalid. The consequence of accepting Griffin's argument would be to disrupt the internal operations of the Department of Justice by prohibiting the Attorney General and the Solicitor General from transferring these tasks to their subordinates when they are occupied with other business. Accordingly, we reject Griffin's interpretation of Section 3742(b).

Section 3742 creates for the first time a comprehensive system for appellate review of sentences. S.Rep. No. 225, 98th Cong.2d Sess. 155, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3338. Congress designed the statute to focus the appellate courts' attention on those sentences for which review is crucial to the proper functioning of the sentencing guidelines and to provide a means to correct erroneous and clearly unreasonable sentences. *Id.* Congress determined that government appeals of sentences below the applicable guideline range were necessary to this system. Congress found:

> If only the defendant could appeal his sentence, there would be no effective opportunity for the reviewing courts to correct the injustice arising from a sentence that was patently too lenient. This consideration has led most Western nations to consider review at the behest of either the defendant or the public to be a fundamental precept of a rational sentencing system, and the Committee considers it to be a critical part of the bill's sentencing structure. The unequal availability of appellate review, moreover, would have a tendency to skew the system, since if appellate review were a one way street, so that the tribunal could only reduce excessive sentences but not enhance inadequate ones, then the effort to achieve greater consistency might well result in a gradual scaling down of sentences to the level of the most lenient ones. Certainly the development of a principled and balanced body of appellate case law would be severely hampered.

*Id.* at 151, 1984 U.S.Code Cong. & Admin. News at 3334.

Congress imposed the restriction at issue in the present case in order to assure that appeals are not routinely filed for every sentence below the guidelines. *Id.* at 154, 1984 U.S.Code Cong. & Admin.News at 3337. This policy may be fulfilled, however, without interpreting the personal approval requirement as jurisdictional. By directing the Attorney General and Solicitor General to approve appeals personally, section 3742(b) provides for centralized decisionmakers who will screen proposed appeals. Regardless of whether the Attorney General and Solicitor General or their delegates actually sign the authorization, the Justice Department's present procedures ensure that proposed appeals will be reviewed for consistency with Congress's policy directives.

Two other circuit courts have considered this issue and determined that section 3742(b)'s personal approval requirement is not jurisdictional. In *United States v. Gurgiolo,* 894 F.2d 56 (3d Cir.1990), the Third Circuit held the following:

> When the Solicitor General is unavailable, it is sufficient for section 3742(b) purposes for the government ... to secure the approval of the Deputy Solicitor General acting in the Solicitor General's place. Second, the fact that the government's notice of appeal failed to indicate this notice of approval in its text does not dictate dismissal. *See* Fed.R.App.P. 3(c) ("[a]n appeal shall not be dismissed for informality of form or title of the notice of appeal.").

*Id.* at 57 n. 1. In *United States v. Smith,* 910 F.2d 326 (6th Cir.1990), the Sixth Circuit held:

> Section 3742(b) does not require the personal approval of the Attorney General or Solicitor General to be in writing or that the approval be filed in the Court of Appeals. However, it is undisputed that Congress intended that such permission be obtained.

It is the view of this panel that proof of the personal approval is not of juris-

dictional dimensions in the sense that a timely notice of appeal in a criminal case is jurisdictional.

*Id.* at 328.[3]

The regulations governing the Department of Justice and describing the responsibilities of the Deputy Solicitor General support the conclusion that the authorization of the present appeal was proper. The regulation regarding exercise of authority in the absence of a department head provides:

> The head of each organizational unit of the Department is authorized, in case of absence from office or disability, to designate the ranking deputy (or an equivalent official) in the unit who is available to act as head. If there is no deputy available to act, any other official in such unit may be designated.

28 C.F.R. § 0.132(e). In its response to the Court's inquiry, the Department of Justice stated that Deputy Solicitor General Roberts, who signed the authorization in the present case, is designated as the ranking deputy in accordance with 28 C.F.R. § 0.132. This statement is supported by the official job description of the Deputy Solicitor General, which states that "[i]n the absence of the Solicitor General, [the Deputy Solicitor General] acts for him in certain matters."[4] Accordingly, under established Department of Justice procedures, Deputy Solicitor General Roberts had the authority to act as Solicitor General in authorizing the present appeal.

Forbidding the Attorney General and the Solicitor General to transfer authority to approve appeals while the Attorney General and the Solicitor General are occupied with other duties would interfere with the internal operations of the Department of Justice. This result is undesirable for both the Department of Justice and the Court

because it forces the Court to scrutinize the day to day decisionmaking of the Attorney General, the Solicitor General, and their subordinates. The Supreme Court previously has rejected arguments that courts should probe the decisionmaking process of a high public official in order to determine whether he exercised his independent judgment or relied on the advice of his subordinates. *Compare Citizens of Overton Park v. Volpe,* 401 U.S. 402, 408–09, 91 S.Ct. 814, 819–20, 28 L.Ed.2d 136 (1971) (Marshall, J.) (statute requiring Secretary of Transportation to approve purchases of park lands for highways); *with id.* at 422, 91 S.Ct. at 827 (Brennan, J., concurring) (criticizing Secretary of Transportation for failing to hold hearing under statute).

## CONCLUSION

We DENY Griffin's motion to dismiss the appeal.

BIRCH, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion, and for the reasons that follow, I would grant appellee's motion to dismiss the government's appeal. Appellee Griffin's motion to dismiss the government's appeal of his sentence, pursuant to 18 U.S.C. § 3742(b), presents an issue of first impression for this court.

## I. BACKGROUND

Griffin, together with two co-defendants, Jackie D. Long and Robert F. Money, were jointly indicted for their participation in a cross-burning at a black family's residence near Holt, Florida. All three co-defendants pled guilty to conspiracy to interfere with civil rights and were sentenced by the same district judge. Long and Money were sen-

---

**3.** The Sixth Circuit went on to state that because there was no statute or rule governing proof of personal approval, the court would, in the exercise of its supervisory authority, prospectively require that the government file proof of approval no later than the filing of the government's brief. This proof was to be dated no later than the day on which the notice of appeal was filed. *Smith,* at 328. *Smith* repudiates

contrary dictum in *United States v. Hays,* 899 F.2d 515, 517 n. 1 (6th Cir.1990).

**4.** The job description further provides, "In the Solicitor General's absence, [the Deputy Solicitor General] represents the Solicitor General's Office in meetings with the Attorney General, Deputy Attorney General and others for the purpose of formulating policy and strategy."

tenced together on October 6, 1989, and Griffin was sentenced on October 27, 1989. The district judge ruled with respect to each co-defendant, based upon the same rationale, that the "arson" and "vulnerable victim" provisions of the Sentencing Guidelines were inapplicable, and that the appropriate offense level was, therefore, 13 rather than 17.

The United States has filed notices of appeal with respect to each co-defendant challenging the sentences imposed. Given the requirements specified in 18 U.S.C. § 3742(b), the government submitted a written appeal recommendation to the Solicitor General on November 2, 1989. The memorandum accompanying the recommendation discussed the facts of the case, the proceedings in the trial court, and the appealable issues with respect to each co-defendant, including Griffin. The government, however, requested authorization to appeal only with respect to Long and Money.[1] On November 6, 1989, the date the time for appealing Long and Money's sentences was due to expire, Solicitor General Kenneth W. Starr signed an "authorization slip".[2] A notice of appeal was filed on the same day, and was assigned "No. 89-3942".

On November 15, 1989, 11 days prior to the expiration of the time for appeal of Griffin's sentence, the government submitted a one-page memorandum to the Solicitor General noting the earlier appeal recommendation and authorization, and confirming that, with respect to Griffin, the district court had also ruled, for the same reasons stated at Long and Money's sentencing hearing, that the "arson" and "vul-

nerable victim" guidelines were inapplicable. The government stated that the issues in the requested Griffin appeal would be identical to those in the previously authorized appeal. On November 17, 1989, nine days prior to the expiration of the appeal time on Griffin's sentence, Deputy Solicitor General John G. Roberts, Jr. signed an "authorization slip".[3] Based upon that document, a notice of appeal was filed on November 22, 1989, four days prior to the expiration of the time for the government's appeal.

On February 7, 1990, Griffin's counsel made a telephone request of the government seeking a copy of the document signed by the Solicitor General personally authorizing the appeal of Griffin's sentence. Copies of both "authorization slips" theretofore signed (Appendices A and B) were provided to Griffin's counsel. Also provided to counsel was a copy of an "authorization slip" dated February 7, 1990, personally signed by Solicitor General Starr.

## II. DISCUSSION

### 1. *The Positions of the Parties.*

Griffin's motion to dismiss is straightforward and relies on the clear and unambiguous language of 18 U.S.C. § 3742(b), which provides in pertinent part as follows:

§ 3742. Review of sentence

. . . .

(b) Appeal by the Government.—The Government, with the personal approval of the Attorney General or the Solicitor General, may file a notice of appeal in

---

**1.** At page four of "Response Of The United States To Griffin's Motion To Dismiss Appeal No. 89–4007" (Government's Brief) the government states: "We indicated that our representations regarding Griffin's sentencing were subject to confirmation upon receipt of the transcript; that we did not plan to file a notice of appeal with respect to Griffin until we had received and reviewed that transcript; and that we were therefore, for the moment, requesting appeal authorization *only* with respect to Long and Money." (emphasis added) (footnote omitted)

**2.** Attached here as Appendix A is a copy of what the government identifies as an "authorization

slip" ... "authorizing a government appeal of the sentences imposed on Long and Money." A review of the document discloses very little information since it only contains the word "Appeal", the caption of the case, the date, and the Solicitor General's signature and signature block. No reference is made to 18 U.S.C. § 3742(b) or to the fact that it is the sentences which are being appealed. A stamped "expedite" also appears on the face of the document.

**3.** A copy of that document is attached hereto as Appendix B.

the district court for review of an otherwise final sentence if the sentence—

. . . .

(2) was imposed as a result of an incorrect application of the sentencing guidelines.

Griffin's argument is that the authorizing statute means what it plainly states; that is, that the Attorney General or the Solicitor General must give his "personal approval" before a notice of appeal may be filed. Griffin contends that personal approval was not timely given in this case.

The government states: "It was not then and it is not now the government's position that a written authorization slip signed by the Solicitor General himself is a prerequisite to this or any similar appeal."[4] In amplification of its position, the government advances three arguments: (1) the signature of the Deputy Solicitor General on the "authorization slip" satisfies the "personal approval" requirement of the statute; (2) in the total context of the appeal authorization events in this case the Solicitor General himself "personally approved" the appeal within the meaning of the statute; and, (3) if there was no "technical compliance" with the "personal approval" requirement of the statute, dismissal of the appeal would not be the appropriate "sanction".

### 2. *The Substitute Signature Argument.*

The government represents that on November 17, 1989, Deputy Solicitor General John G. Roberts, Jr. was acting as Solicitor General while Mr. Starr was "out of the office for a legal conference in San Francis-

co during the pertinent time period."[5] In support of this conclusory statement the government cites 28 C.F.R. 0.132(e), which in pertinent part[6] provides as follows:

The head of each organizational unit of the Department [of Justice] is authorized, in case of absence from office or disability, to designate the ranking deputy (or an equivalent official) in the unit who is available to act as head.

The government contends that "[u]nder 28 C.F.R. 0.132(e), ... the official designates another individual to exercise the official's *own authority* in his absence; the designee thus acts *as the official* in all respects, when (and only when) the official is himself unavailable to exercise that authority."[7]

Nowhere in the original record before the court is there any evidence that the Solicitor General *exercised* his authority under 28 C.F.R. 0.132(e) to designate Mr. Roberts as acting department head. Moreover, after the clerk of the court made a specific request for the government to supplement its brief by submission of any such evidence, nothing definitive was forthcoming.[8] Accordingly, even if we were to read the regulation as expansively as the government urges, there is nothing to indicate that the Solicitor General affirmatively designated Mr. Roberts as head of his office. Moreover, we are unable to conclude that Deputy Solicitor General John G. Roberts, Jr. was, in fact, on November 17, 1989, acting for the Solicitor General. From a review of the face of the "authorization slip" executed by Mr. Roberts, it is not at all clear in what capacity he was acting when he signed the document. No

---

**4.** Government's Brief at 5. We note that the Sixth Circuit disagrees with this conclusion. In *United States v. Bogas,* 899 F.2d 1222 (6th Cir. 1990) (table) (text in WESTLAW), that court asserted that: "This Court is without jurisdiction to hear the government's appeal under 18 U.S.C. § 3742(b) without a written authorization of the Solicitor General or Attorney General."

**5.** Government's Brief at 4, n. 2.

**6.** The government contends that its quotation from the C.F.R. cite is the pertinent part. However, 28 C.F.R. 0.130 ["Functions common to heads of organizational units"] sets out four broad categories of functions to be performed

by heads of organizational units (including personnel, administration and budgetary matters and special assignments from the Attorney General). When this section is read in combination with 28 C.F.R. 0.132(e) the "authority" and capacity in which the delegatee acts is thus confined and clearly does not encompass action as an alter ego on matters that Congress intended to be "personal" to the Solicitor General (or Attorney General).

**7.** Government's Brief at 6, n. 5 (emphasis in original).

**8.** A copy of the government's response to the clerk's inquiry is attached hereto as Appendix C.

words such as "acting organizational unit head" or "designated Solicitor General" appear on the document.

More importantly, the foregoing analysis relative to delegation is not the controlling question. The pivotal issue is whether the Solicitor General (or Attorney General) may delegate his appeal-authorizing authority under the controlling statute. It is my view that he may not.

In *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568, 97 S.Ct. 1349, 1352–53, 51 L.Ed.2d 642 (1977), the Supreme Court confirmed the general rule: "It has long been established that the United States cannot appeal in a criminal case without express congressional authorization. (citations omitted) ... Therefore, unless barred by the Double Jeopardy Clause of the Constitution, appeals by the Government from the judgments of acquittal entered by the District Court under Rule 29(c) are authorized by [18 U.S.C.] § 3731." In the case at bar, the express congressional authorization is embodied in 18 U.S.C. § 3742(b). That statute, unlike section 3731, specifically provides for the "personal approval" of the Attorney General or the Solicitor General.[9] In this case there is no indication that the requisite *personal* approval was given *before* the filing of the appeal.

In support of its position, the government directs our attention to *United States v. Gurgiolo*, 894 F.2d 56, 57 n. 1 (3d Cir. 1990) which suggests the result sought by the government. However, the conclusion asserted by that court in a footnote is unsupported by discussion or authority. The only other reported case that address-

es this issue appears to be *United States v. Hays*, 899 F.2d 515 (6th Cir.1990) wherein the Sixth Circuit stated:

We note that the government belatedly has submitted to the court an authorization of this appeal executed *prior to* the notice of appeal by the then-acting Solicitor General, as is required under 18 U.S.C. § 3742(b). This court would have been without jurisdiction to hear the government's appeal had such an authorization by the Solicitor General or Attorney General not been filed. The authorization should have been filed with the notice of appeal.

*Id.* at 517 n. 1 (emphasis added).

The government also directs our attention to 18 U.S.C. § 2516(1) which requires the personal authorization of the Attorney General for initiation of certain wiretaps. However, that statute specifically contemplates and authorizes delegation. The instant statute does not provide for delegation. Moreover, courts construing 18 U.S.C. § 2516(1) have been strict in interpretation of the personal approval requirement. *See United States v. Robinson*, 496 F.2d 225 (5th Cir.1974).

3. *The Total Context and Ratification Argument.*

The thrust of the government's alternative argument[10] is that in the total context of the appeal approval process in this case, the court should find that the Solicitor General himself has "personally approved" the appeal of Griffin's sentence. After a selective quotation from the legislative history germane to 18 U.S.C. § 3742(b),[11] the

9. As originally enacted, section 3742(b) had at the very end of that section, after itemizing the various circumstances in which such an appeal could be taken, the following language: "... and the Attorney General or the Solicitor General personally approves the filing of the notice of appeal." The current version of the section, enacted in 1988 (Public Law 100–690 § 7103(a)(5)(B)), includes the operative language in the text at the beginning of the section. The import of both versions is manifestly the same; the Attorney General or the Solicitor General must give his personal approval for the filing of an the appeal.

10. As a predicate to advancing this argument, the government assumes that the document signed by Deputy Solicitor General Roberts does not satisfy 18 U.S.C. § 3742(b).

11. Completely quoted, the legislative history of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 1984 U.S.Code Cong. & Admin.News 3182, 3337–38, states:

The government may petition for review of a sentence *only* with the personal approval of the Attorney General or the Solicitor General in order to assure that such appeals are not routinely filed for every sentence below the guidelines.... The Committee believes that

government concludes: "It is inconceivable that the Solicitor General, having deemed these determinations [i.e., those by the district court in refusing to apply the "arson" and "vulnerable victim" guidelines] worthy of challenge, could have intended to allow the challenge only with respect to Long and Money, and not with respect to their equally-affected co-defendant Griffin." [12] This is, at best, speculation—albeit speculation with logical appeal. There is nothing in the record occurring *before* filing of the notice of appeal to substantiate or indicate the Solicitor General's approval. Here we have not only the absence of a written authorization slip, the method and procedure adopted by the Solicitor General's Office to evidence and communicate his authorization, but a lack of any personal consent or approval *before* the appeal was initiated.

Finally, the government argues that Mr. Starr's signing of the "authorization slip" on February 7, 1990, over two months after the expiration of the period allowed for the filing of an appeal by the government in Griffin's case, is a "ratification" of his deputy's approval of the appeal or, alternatively, of his own earlier purported approval of the appeal. Where personal approval is mandated ratification will not suffice. Inherent in the taking of an appeal are the time limitations and "grace periods" for excusable neglect.[13] These mandates cannot be ignored or circumvented through an after-the-fact "ratification" theory of ac-

tion. Accordingly, I reject the government's alternative argument.

### 4. *The Nunc Pro Tunc Argument.*

The government's final argument suggests that dismissal is an inappropriate "sanction" should the court determine that there has been no "technical compliance" with the "personal approval" requirement of 18 U.S.C. § 3742(b). It is also suggested that the court should afford the government an opportunity to "cure the defect by obtaining *nunc pro tunc* the authorization required by 18 U.S.C. § 3742(b), and should dismiss the appeal only if such authorization is not forthcoming." [14] This argument ignores the general rule that the government may appeal a judgment in a criminal case only when expressly authorized by Congress. *United States v. Martin Linen Supply Co., supra,* at 1485; Fed.R.App.P. 4(b). Congressional authorization is explicit. Accordingly, an appeal of a sentence under the Sentencing Guidelines may *only* be initiated when the personal approval of the Attorney General or the Solicitor General is timely given. Absent such authorization the notice of appeal is defective and improperly filed. Under such circumstances dismissal is mandated. I respectfully suggest that this court's constitutional role is to interpret law and is not to make it. Should Congress' mandate be administratively burdensome, Congress should be petitioned to change it.

---

section 3742 creates for the first time a comprehensive system of review of sentences that permits the appellate process to focus attention on those sentences whose review is crucial to the functioning of the sentencing guidelines system, while also providing adequate means for correction of erroneous and clearly unreasonable sentences.
(emphasis added).

**12.** Government's Brief at 8.

**13.** Fed.R.App.P. 4(b) ("When an appeal by the government is *authorized by statute* ... [u]pon a showing of excusable neglect the district court may, before or after the time has expired, ... extend the time for filing a notice of appeal...." (emphasis added)).

**14.** Government's Brief at 10–11.

APPENDIX A

**U.S. Department of Justice**

Office of the Solicitor General

NOVEMBER 6, 1989

**RE:   UNITED STATES v. LONG & MONEY**
**(N.D. Fla.)**

APPEAL

EXPEDITE

KENNETH W. STARR
Solicitor General

Mr. Bryson

APPENDIX B

U.S. Department of Justice

Office of the Solicitor General

---

NOVEMBER 17 , 1989

RE: UNITED STATES v. GRIFFIN - N.D. Fla.

---

APPEAL

*signature* FOR

KENNETH W. STARR
Solicitor General

Mr. Bryson

APPENDIX C

U.S. Department of Justice

Civil Rights Division

JRD:DKF:LAL
DJ: 175-17-41

---

Appellate Section
P.O. Box 66078
Washington, D.C. 20035-6078

July 24, 1990

Miguel J. Cortez, Clerk
United States Court of Appeals
  for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303-2295

Re: No. 89-4007, United States v. Keith A. Griffin; No. 89-
3942, United States v. Jackie D. Long & Robert F. Money

1492

Dear Mr. Cortez:

This is in response to the Court's inquiry, via telephone call yesterday from Kembra Smith of your office, regarding the Response of the United States to Griffin's Motion to Dismiss Appeal No. 89-4007. The Court has inquired whether there is any written document supporting our assertion, on page 7 of that Response, that Deputy Solicitor General Roberts is authorized to act as Solicitor General in Solicitor General Starr's absence and, in that capacity, to give his personal approval to government appeals.

There is no written document in which Mr. Starr explicitly designates Mr. Roberts, by name, to serve this function. However, we attach a copy of the position description for the position of Deputy Solicitor General and Counselor to the Solicitor General, the position Mr. Roberts has held since October 24, 1989. In accordance with 28 C.F.R. 0.132(a) (quoted at page 6 of our Response), the incumbent of this position is designated as the ranking deputy. The position description states that "[i]n the absence of the Solicitor General," the Deputy Solicitor General and Counselor to the Solicitor General "acts for [the Solicitor General] in certain matters" (Position Description at 2). Because the Solicitor General himself is occasionally unavailable to authorize an appeal within the time allowed, it has long been the practice in the Solicitor General's Office to include the authorization of appeals among the matters so delegated to the ranking deputy. When Mr. Roberts assumed this position, Mr. Starr instructed him orally as to the matters delegated to him in the Solicitor General's absence, and explicitly empowered Mr. Roberts to act on the Solicitor General's behalf, in his absence, in the matter of authorizing appeals. Mr. Roberts is prepared to execute an affidavit to that effect, should the Court feel this is necessary.

— 2 —

At the Court's request, we are telefaxing a copy of this letter and the attached position description to FTS 841-3785. We trust that this will satisfy any concerns the Court may have. However, if anything further is needed, please call the undersigned attorney at FTS 514-4126.

Sincerely,

John R. Dunne
Assistant Attorney General
Civil Rights Division

By:

Louise A. Lerner
Attorney
Appellate Section

cc: Joel C. Fanning, Esquire
Stephen E. Sutherland, Esquire
E. Brian Lang, Esquire
Stephen P. Preisser, Esquire

POSITION DESCRIPTION (Please Read Instructions on the Back)

1. Agency Position No.

| 2. Position for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. OPM Certification No. |

| Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. U.S. Office of Personnel Management | | | | | | |
| b. Department, Agency or Establishment | Deputy Solicitor General and Counselor to the Sol. Gen. | ES | 905 | | | |
| c. Second Level Review | | | | | | |
| d. First Level Review | | | | | | |
| e. Recommended by Supervisor or Initiating Office | | | | | | |

16. Organizational Title of Position (if different from official title)

17. Name of Employee (if vacant, specify)

18. Department, Agency, or Establishment

Department of Justice

a. First Subdivision

Office of the Solicitor General

b. Second Subdivision

Employee Review—This is an accurate description of the major duties and responsibilities of my position.

Signature of Employee (optional)

20. Supervisory Certification. I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

21. Classification/Job Grading Certification. I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.

Name: ES-DSGC
Eff. Date Typed 3/89

25. Description of Major Duties and Responsibilities (See Attached)

## POSITION SUMMARY

As Deputy Solicitor General and Counselor to the Solicitor General, (1) advises the Solicitor General on policies and procedures governing the work of the office; (2) supervises attorneys in the handling of a variety of appellate matters; (3) performs the final review of appellate matters prior to action by the Solicitor General; (4) counsels with the Solicitor General on cases other than those falling within his direct supervisory responsibility; and (5) personally prepares or argues selected cases before the Supreme Court.

## MAJOR DUTIES AND RESPONSIBILITIES

Serves as the principal assistant to the Solicitor General with respect to appellate matters involving particular subjects (other than tax work generally) assigned by the Solicitor General. In this connection, supervises appellate attorneys who review appeal and certiorari recommendations and drafts of briefs and petitions submitted to the office by other departments and agencies, and by components of the Department of Justice. Advises and consults with members of the staff of the Solicitor General's Office and consults with the draws upon the services of top officials of this and other agencies in formulating recommendations for or against Supreme Court review and in preparing and reviewing the Government's briefs on the merits. Reviews memoranda recommending for or against appeal by others and submits to the Solicitor General recommendations for the disposition of the matters. Personally performs the initial review of selected matters.

In the Solicitor General's absence, represents the Solicitor General's Office in meetings with the Attorney General, Deputy Attorney General and others for the purpose of formulating policy and strategy.

Personally prepares or argues before the Supreme Court cases of the highest order or complexity and importance.

In the absence of the Solicitor General, acts for him in certain matters.