**UNITED STATES of America,
Appellee–Cross–Appellant,**

v.

**José GONZALEZ, Defendant–
Appellant–Cross–Appellee.**

**Nos. 1286, 2175, Dockets
91–1690, 92–1014.**

United States Court of Appeals,
Second Circuit.

Submitted April 28, 1992.

Decided July 24, 1992.

Lawrence K. Feitell, New York City, submitted a brief for defendant-appellant.

Otto G. Obermaier, U.S. Atty., Susan E. Brune, Daniel C. Richman, Asst. U.S. Attys., New York City, submitted a brief, for appellee.

Before: MESKILL, Chief Judge, TIMBERS and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal presents the question of when a court should conduct an evidentiary hearing into allegations underlying a defendant's presentence application to withdraw his plea of guilty. It also presents the question of whether a district court, in the absence of a Government motion pursuant to section 5K1.1 of the Sentencing Guidelines, can depart from a defendant's applicable guideline range on the grounds that the defendant's cooperation with the Government provided evidence of his contrition. These issues arise on an appeal by José Gonzalez and a cross-appeal by the United States from the November 13, 1991, judgment of the District Court for the Southern District of New York (Peter K. Leisure, Judge). Because the District Court properly declined to hold an evidentiary hearing into the conclusory and unsupported allegations underlying Gonzalez' application to withdraw his plea, we affirm the conviction. Because the Court erred in departing downwards from Gonzalez' guidelines range, we vacate the sentence

and remand to the District Court for resentencing.

## Background

Gonzalez' arrest on October 9, 1990, outside an apartment building in the Washington Heights section of Manhattan, was the product of a two-month investigation by the Bureau of Alcohol, Tobacco and Firearms ("ATF") into a cocaine operation headquartered in various apartments in the building. During that investigation, Gonzalez was observed participating in four cocaine transactions. On one occasion ATF agents observed a semi-automatic pistol resting beside the scale Gonzalez was using to weigh out cocaine while a shotgun lay on a table nearby.

A sixteen-count indictment was filed against Gonzalez and two co-defendants. Gonzalez was charged with conspiring to distribute cocaine, four counts of possessing cocaine with intent to distribute, and two counts of using and carrying a firearm in connection with a drug trafficking crime.

Attorney Michael Maloney filed an appearance as Gonzalez' retained counsel in November 1990. On December 11, 1990, Gonzalez telephoned the prosecutor and asked to meet with her without Maloney present. At the Government's request, Judge Leisure appointed attorney Bobbi Sternheim to consult with Gonzalez as to whether he wished to continue to have Maloney represent him. Judge Leisure met privately with Gonzalez, Sternheim, and the prosecutor. Sternheim informed Judge Leisure that she had consulted with Gonzalez and understood that Gonzalez was not dissatisfied with his present representation and did not wish to end his relationship with Maloney. In response to the Judge's questions, Gonzalez indicated some concern that Maloney "works around the neighborhood, let's say he works with a lot of people," and Gonzalez explained that he desired "more privacy" in pursuing cooperation discussions with the prosecutor. The Judge took great care in advising Gonzalez that, if he felt Maloney had affiliations with others that were contrary to Gonzalez' interest, he should obtain substitute counsel. Gonzalez insisted that he did not wish to have Maloney relieved as counsel and said that he was comfortable with Maloney representing him in his negotiations with the prosecutor.

On December 19, 1990, Gonzalez entered into a cooperation agreement with the Government whereby he agreed to plead guilty to the narcotics conspiracy count and one of the firearm counts. The cooperation agreement required Gonzalez to disclose truthfully all information about his own criminal activity and that of others, and to testify truthfully with respect to any matters about which the Government requested his testimony. The agreement obliged the Government to inform the sentencing Judge of the nature and extent of Gonzalez' cooperation and to make a motion for a downward departure pursuant to section 5K1.1 of the Sentencing Guidelines if the Government determined that Gonzalez had provided substantial assistance in the investigation or prosecution of a crime. The cooperation agreement contained no provision with respect to bail, and the final paragraph of the agreement provided that there were "no additional promises, agreements, and conditions" other than those set forth in the agreement.

During the plea allocution on the same day, Judge Leisure carefully examined Gonzalez concerning the cooperation agreement. In response to the Judge's questions, Gonzalez assured the Court that he had read the cooperation agreement carefully, understood it, had no questions about its content, and had not been induced to plead guilty by any promises other than those contained in the agreement. In addition, Maloney told the Court that he had reviewed the cooperation agreement paragraph by paragraph with Gonzalez. Gonzalez then readily admitted his involvement in a cocaine conspiracy and his use of a gun while selling cocaine. With respect to the firearm charge, Gonzalez specifically stated that he had been dealing drugs while using a weapon, which he identified as a .380 caliber—the same caliber of weapon ATF agents had found in their search of the apartments following Gonzalez' arrest. The Court accepted Gonzalez' guilty plea.

On March 12, 1991, having been informed by the Government that he was under investigation for his participation in a scheme with his wife involving a fraudulent mortgage application, Maloney moved to withdraw from his representation of Gonzalez. The Court granted the motion and appointed Lawrence Feitell in Maloney's place. Neither Gonzalez nor Feitell was informed of the reason for Maloney's withdrawal.

In June, the Government wrote Feitell that it considered Gonzalez to be in breach of the cooperation agreement because, among other things, Gonzalez had refused the Government's request that he testify, and the Government alerted Feitell that it did not intend to move pursuant to section 5K1.1 for a downward departure at Gonzalez' sentencing.

On July 11, 1991, Gonzalez, through counsel, advised the Court that he wished to withdraw his guilty plea. In his motion papers, Gonzalez asserted that he had never read the cooperation agreement, that he did not know that it required him to testify, and that Maloney had assured him it contained no such requirement. Gonzalez also asserted that he was innocent of the firearm count and had pleaded guilty to it only because Maloney had informed him that the prosecutor would approve Gonzalez' release on bail if he pleaded guilty to that count.

In the course of opposing Gonzalez' motion, the Government disclosed that, in mid-February 1991, Maloney had been informed that he was under investigation for his participation in the mortgage application fraud, and that Maloney had entered into a cooperation agreement with the Government in June of 1991 that required him to plead guilty to one count of conspiracy. In response to this disclosure, Gonzalez supplemented his arguments for withdrawal with the contention that Maloney had a conflict of interest at the time Gonzalez entered his plea.

Without holding a hearing, the Court denied Gonzalez' motion to withdraw his plea. Judge Leisure noted that, at the time the plea was entered, the Court was satisfied that the plea was knowing and voluntary and not the result of force or any promises beyond those contained in the cooperation agreement. The Judge found that Gonzalez had provided no factual support for his allegation that he had not read the cooperation agreement, or for his allegations that his attorney had advised him both that he would not be required to testify and that the prosecutor would approve his release on bail if he pleaded guilty. Thus the Judge found no reason to doubt the accuracy of Gonzalez' contrary statements during his plea allocution. Judge Leisure further found that Gonzalez had failed to demonstrate any connection between the substance of the advice that he had received from Maloney in December 1990, regarding his guilty plea, and Maloney's subsequent discovery that he was the subject of a criminal investigation in an unrelated case.

At sentencing the Government informed the Court that, in the course of his cooperation, Gonzalez had provided the Government with some accurate information about the narcotics organization for which he worked. However, the Government stated that it would not make a motion pursuant to section 5K1.1 because of Gonzalez' refusal to testify as well as the fact that some of the information he had given had proved to be inaccurate. Judge Leisure stated his intention of giving Gonzalez "full credit" for his cooperation, even though qualified, because the Judge found it to be a sign of contrition. Relying on Gonzalez' cooperation, and over the Government's objection, Judge Leisure departed downward from the applicable guideline range of 33–41 months' imprisonment on the drug conspiracy count and imposed a term of twelve months' imprisonment on that count. The Court also imposed the mandatory minimum five-year consecutive term of imprisonment on the firearm count, and a three-year term of supervised release.

## Discussion

1. Withdrawal of guilty plea

Pursuant to Fed.R.Crim.P. 32(d), a district court may permit withdrawal of a

guilty plea prior to sentencing "upon a showing by the defendant of any fair and just reason." Although this standard implies that motions to withdraw prior to sentence should be liberally granted, *see United States v. Russell,* 686 F.2d 35, 38 (D.C.Cir.1982), a defendant who seeks to withdraw his plea "bears 'the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government.'" *United States v. Quinones,* 906 F.2d 924, 928 (2d Cir.1990) (quoting *United States v. Michaelson,* 552 F.2d 472, 475 (2d Cir. 1977)), *cert. denied,* —— U.S. ——, 111 S.Ct. 789, 112 L.Ed.2d 851 (1991). The Government is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal; however, the presence or absence of such prejudice may be considered by the district court in exercising its discretion. *United States v. Saft,* 558 F.2d 1073, 1083 (2d Cir.1977). *See also United States v. Figueroa,* 757 F.2d 466, 475 (2d Cir.), *cert. denied,* 474 U.S. 840, 106 S.Ct. 122, 88 L.Ed.2d 100 (1985). The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea. *See Figueroa,* 757 F.2d at 475 (defendant's motion followed reevaluation of case against him); *Michaelson,* 552 F.2d at 476 (defendant's motion followed trial of his co-defendants and his reading of his presentence report).

Upon review of a district court's denial of a motion to withdraw a guilty plea,

> [a]djudicative facts are ... subject to the clearly-erroneous standard of review. Whether the facts so found constitute a "fair and just reason" for the withdrawal of a plea and whether the district judge properly denied the motion to withdraw the plea are mixed questions of law and fact, reviewed by us only for abuse of discretion.

*United States v. O'Hara,* 960 F.2d 11, 13–14 (2d Cir.1992).

■ A defendant is not entitled to an evidentiary hearing as a matter of right whenever he seeks to withdraw his guilty plea. Although the standard to be applied in granting a hearing is less rigorous than the standard for granting the motion to withdraw the plea, *United States v. Fountain,* 777 F.2d 351, 358 & n. 3 (7th Cir. 1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986), the defendant must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing. *Id.* at 358 n. 3. No hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory. *United States v. Crooker,* 729 F.2d 889, 890 (1st Cir.1984); *see also Fountain,* 777 F.2d at 358; *United States v. Barnes,* 504 F.Supp. 330, 332 (W.D.Okla.1980).

■ Gonzalez argued to the District Court that he should be permitted to withdraw his plea because he was innocent of the gun charge and had pleaded guilty because of reliance on his counsel's incorrect advice regarding the obligations of the cooperation agreement and the possibility of bail. Gonzalez' assertion of his innocence is undercut by its timing, coming nearly seven months after the plea, *cf. U.S. v. Barker,* 514 F.2d 208, 222 (D.C.Cir.1975) (swift change of heart indicates plea made in haste or confusion), and only after he learned that the Government would not move for a downward departure, *see United States v. Fernandez,* 734 F.Supp. 599 (S.D.N.Y.1990) (denying withdrawal motion made four months after plea and after defendant had been furnished with Probation Department's sentence calculation), *aff'd mem.,* 932 F.2d 956 (2d Cir.1991). Moreover, Gonzalez' claim was directly contradicted by his clear statements at allocution, which were sufficiently detailed to include the caliber of the gun in question.

At the plea allocution, Gonzalez also stated unequivocally that he had read the cooperation agreement and was familiar with its content, and that no other offers had been made to him to induce his plea. Thus

the District Court could properly reject Gonzalez' unsupported allegations that his plea was the result of reliance on his attorney's incorrect characterization of the agreement and transmittal of an alleged promise made by the prosecutor. No evidentiary hearing was required on the basis of these unsupported allegations, which merely contradicted Gonzalez' earlier statements made under oath at his plea allocution. *See Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (statements at plea allocution "carry a strong presumption of verity"); *United States v. Bambulas*, 571 F.2d 525, 526 (10th Cir.1978) (statements at plea allocution are conclusive absent credible reason "justifying departure from their apparent truth").

■ Gonzalez also seeks to withdraw his plea on the ground that his attorney labored under a conflict of interest at the time of the plea. Gonzalez contends that he was misled into pleading guilty to the gun count by an attorney who was under pressure from the Government by reason of his own criminal conduct. However, the District Court correctly determined that Gonzalez had not demonstrated any connection between the substance of Maloney's advice in December of 1990 regarding Gonzalez' plea and Maloney's discovery two months later that he was under investigation in an unrelated case. Gonzalez' bare assertion that Maloney must have known in December of 1990 that he was in the Government's "cross-hairs" is insufficient to demonstrate that an actual conflict of interest existed at the time of the plea. *See United States v. Contractor*, 926 F.2d 128, 134 (2d Cir.) (to establish ineffective assistance of counsel on the basis of a conflict of interest, defendant must prove that an actual conflict of interest existed and that it adversely affected his lawyer's performance), *cert. denied*, — U.S. —, 112 S.Ct. 123, 116 L.Ed.2d 91 (1991).

**2. Jurisdiction over cross-appeal**

■ Gonzalez moves to dismiss the Government's cross-appeal, arguing that the appeal is jurisdictionally defective because the Government did not secure written permission from the Justice Department to appeal the sentence imposed until February 24, 1992, more than two months after filing its notice of appeal on December 20, 1991. Congress has authorized the Government, with the personal approval of designated officials of the Department of Justice, to appeal a sentence imposed, among other things, as a result of an incorrect application of the sentencing guidelines. 18 U.S.C. § 3742(b) (1988 & Supp. II 1990). Section 3742(b) provides, in pertinent part:

> (b) Appeal by the Government.—The Government, may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—
>
> \* \* \* \* \* \*
>
> (2) was imposed as a result of an incorrect application of the sentencing guidelines; ...
>
> The Government may not further prosecute such appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General.

18 U.S.C. § 3742(b)(2) (1988 & Supp. II 1990).

Gonzalez contends that failure to obtain approval of one of the designated officials before filing a notice of appeal constitutes a jurisdictional defect that the Government cannot cure. We disagree. All of the courts of appeals that have faced the issue have determined that section 3742(b)'s personal approval requirement is not jurisdictional. *See United States v. Long*, 911 F.2d 1482, 1484 (11th Cir.1990); *United States v. Smith*, 910 F.2d 326, 328 (6th Cir.1990); *United States v. Gurgiolo*, 894 F.2d 56 (3d Cir.1990).[1] We agree. Con-

---

1. The Sixth Circuit, in the exercise of its supervisory authority, required the signing of the personal approval no later than the date of filing the notice of appeal, and the filing of written proof of the personal approval no later than the date of filing the Government's appellate brief. *Smith*, 910 F.2d at 328. The Eleventh Circuit

gress enacted the personal approval requirement to assure that Government appeals are not routinely brought whenever a sentence is imposed below the indicated guideline range. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 154 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3337. Instead, centralized decisionmakers screen proposed Government appeals so that the appellate courts' attention will be focused on those sentences for which review is deemed crucial to the proper functioning of the sentencing guidelines, while also providing adequate means for correcting sentences that the Government contends are erroneous and clearly unreasonable. *See id.* at 155, 1984 U.S.C.C.A.N. at 3338. This policy may be fulfilled, however, without interpreting the personal approval requirement as jurisdictional.

The argument that the personal approval requirement is jurisdictional might have had some plausibility before the 1990 amendment to the statute. Prior to the amendment, section 3742(b) read, in pertinent part:

> (b) Appeal by the Government.—The Government, with the personal approval of the Attorney General or the Solicitor General, may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence— ...
>
> (2) was imposed as a result of an incorrect application of the sentencing guidelines;

18 U.S.C. § 3742(b)(2) (1988). The prior statutory language would have supported the inference that Congress expected the Government to secure the required personal approval before filing its notice of appeal, though even that requirement was not necessarily jurisdictional. In any event, the amended language indicates that approval is not required before filing the notice of appeal, *see United States v. Hall,* 943 F.2d 39, 41 n. 1 (11th Cir.1991), but only before "further prosecution" of the appeal. Since the notice of appeal is the document with jurisdictional significance, the amended language indicates that the

personal approval requirement is not jurisdictional.

In this case, the Government filed the personal authorization along with its appellate brief and had taken no substantial step to "prosecute" the appeal beforehand. There is thus not even a non-jurisdictional defect in the Government's cross-appeal, and the motion to dismiss the cross-appeal is denied.

### 3. Downward departure

■ In deciding to depart on the basis of Gonzalez' cooperation with the Government, the District Court noted that Gonzalez' cooperation had been of some assistance to the Government and found the cooperation to be evidence of Gonzalez' contrition. Judge Leisure referred to this Court's decision in *United States v. Garcia,* 926 F.2d 125 (2d Cir.1991), and alluded to unspecified decisions alleged to grant a district court "leeway" to depart on the basis of a defendant's cooperation in the absence of a motion by the Government.

■ Section 5K1.1 of the Sentencing Guidelines provides:

> Upon motion by the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

This Court has made clear that downward departures based on "substantial assistance" to the Government may be made only where the Government has moved pursuant to section 5K1.1. *See United States v. Agu,* 949 F.2d 63, 67 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 2279, 119 L.Ed.2d 205 (1992); *United States v. Reina,* 905 F.2d 638, 641 (2d Cir.1990); *see also United States v. Huerta,* 878 F.2d 89 (2d Cir.1989), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990) (same rule applies to motions to depart below statutory minimum). We have rejected the proposition that cooperation can be separated into its benefit to the prosecution and its evidence of contrition, with a sentencing

declined to adopt such a rule, *United States v.*

*Hall,* 943 F.2d 39, 41 n. 2 (11th Cir.1991).

judge free to assess the latter as a grounds for departure in the absence of a Government motion. Although a sentencing Judge is in a good position to assess the moral worthiness, contrition, and rehabilitation of a defendant, section 5K1.1 precludes reliance on a defendant's cooperation with the Government as a basis for a departure in the absence of a Government motion. *Agu,* 949 F.2d at 66.

The prosecutor's decision not to move for a cooperation departure under section 5K1.1 is reviewable only upon an adequately pleaded claim that the refusal is not rationally related to any legitimate governmental end, *Wade v. United States,* —— U.S. ——, 112 S.Ct. 1840, 1844, 118 L.Ed.2d 524 (1992), *e.g.,* a claim of misconduct or bad faith. *See United States v. Rexach,* 896 F.2d 710 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990); *United States v. Kahn,* 920 F.2d 1100, 1105–06 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991). There has been no allegation of bad faith here. In the absence of a Government motion, the sentencing judge retains discretion to consider a defendant's cooperation with the prosecution only in selecting a particular sentence within the applicable guideline range. *Huerta,* 878 F.2d at 93.

This Court's decision in *United States v. Garcia, supra,* does not support a departure in this case. In *Garcia,* we ruled that the cooperation covered by section 5K1.1 is cooperation with the prosecution, leaving cooperation with the courts available as a ground for departure under section 5K2.0, even in the absence of a Government motion. 926 F.2d at 127–28. We upheld the District Judge's decision to make a downward departure in the absence of a Government motion where the defendant had rendered substantial assistance *to the judicial system* by pleading guilty early, giving information, and showing himself willing to testify, thereby inducing the guilty pleas of his co-defendants and breaking the "log jam" in a multi-defendant case. *Id.* at 128. Nothing of the sort happened here. Judge Leisure made no finding that Gonzalez' cooperation had led to the disposition of charges pending against others, or in any way proved of substantial assistance to the judicial system.

Because the District Court provided no valid justification for its downward departure, the sentence is vacated, and the case is remanded for resentencing; the conviction is affirmed.