**UNITED STATES of America, Plaintiff,**

**v.**

**Jose FERNANDEZ, Defendant.**

**No. 89 Cr. 199 (JMW).**

United States District Court,
S.D. New York.

March 7, 1990.

Maurice Sercarz, Sercarz, Schechter & Lopez, Brooklyn, N.Y., for defendant.

Samuel Seymour, Asst. U.S. Atty., New York City, for U.S.

## OPINION AND ORDER

WALKER, Circuit Judge [1]:

Defendant has moved, pursuant to Fed. R.Crim.P. 32(d), to withdraw his guilty plea entered on May 10, 1989. For the reasons set forth below, defendant's motion is denied.

## I. BACKGROUND

On March 9, 1989, defendant Jose Fernandez ("Fernandez") was indicted with two co-defendants, Nelson Marte ("Marte") and Rafael Garcia–Flores ("Garcia–Flores"), in two counts for (1) conspiracy to distribute and possess with intent to distribute cocaine, and (2) possession with intent to distribute cocaine, pursuant to 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(B) and 845(a). Marte and Garcia–Flores entered pleas of guilty to both counts of the indictment. Fernandez proceeded to trial, during which he entered a guilty plea.

Trial commenced on May 9, 1989, and the government concluded its case that day. Javier Diaz ("Diaz"), a paid confidential informant, testified that on February 27, 1989, he and an individual named Gabriel, another informant working with the Drug Enforcement Administration ("DEA"), met with Marte and Fernandez to negotiate the sale of cocaine and that on February 28, 1989, after Marte called him to confirm the sale and arrange a meeting to complete the sale, he and Gabriel met Marte and Fernandez at 3:00 p.m. on 136th Street, between Broadway and St. Nicholas Avenue in Manhattan. According to Diaz, Fernandez asked Diaz to show him the money, which Fernandez and Marte visually inspected in Diaz's car, and then Fernandez and Marte left together. Two DEA surveillance agents corroborated Diaz's testimony as to the activities on February 28. The agents also testified that after they observed Marte and Fernandez leaving the meeting, they later observed Fernandez driving

1. Sitting by designation.

alone in a car downtown, in the vicinity of 136th Street.

Diaz concluded by testifying that a short while later that same afternoon he met Fernandez in front of a grocery store on 136th Street, between Broadway and St. Nicholas Avenue, and further discussed the sale with him. According to Diaz, Marte arrived and asked him to accompany him to a taxicab where he could get the narcotics. In the cab, Diaz saw a third individual, Garcia–Flores, holding a package which Marte took and examined. Diaz gave a pre-arranged signal to the DEA agents on the scene who proceeded to arrest Marte, Fernandez and Garcia–Flores. The government then rested its case.

On May 10, 1989, after calling a character witness, Fernandez took the stand. He denied knowing involvement in any narcotics transaction. He testified that on February 27, 1989, he saw Diaz and another individual (Gabriel) at a restaurant where the two asked Fernandez if he knew where Marte was. Fernandez admitted that on February 28, 1989, he met Marte in front of a grocery store on 136th Street between Broadway and St. Nicholas Avenue, but said he was there to borrow Marte's car because his own car was broken. Fernandez testified that he agreed to drive Marte to 143rd Street, where Marte had "an errand" to run, and then drive back to the grocery store on 136th Street where he would meet Marte. Finally, Fernandez testified that later on the afternoon of February 28 he was waiting for Marte in front of the grocery store on 136th Street when he was arrested, and that Marte was near a taxicab.

Upon completion of direct and cross-examinations of Fernandez, the defense rested and the court adjourned for lunch. After lunch and on the eve of summations, Fernandez's attorney informed the court that after "very, very extensive" discussions with Fernandez and his family, Fernandez now wished to change his plea to guilty to both counts of the indictment. The court allowed the application, placed Fernandez under oath and conducted an allocution pursuant to Fed.R.Crim.P. 11(d).

The allocution was in stark contrast to the testimony Fernandez had given earlier that day. In the plea proceeding, Fernandez admitted that he conspired with Marte on February 28, 1989, by agreeing to ask the informants to show him the money for the cocaine. Fernandez also admitted that he understood that if the informants showed them the money, Fernandez and Marte, or Marte alone, would arrange to get the cocaine. Finally, Fernandez admitted that he had agreed to count the money to ensure Marte received the amount Diaz had agreed to pay. However, Fernandez maintained that after he requested to see the money, he simply drove Marte to his errand on 143rd Street and returned to 136th Street to wait for him, as they had agreed. Fernandez said that he did not know whether he would receive any compensation for this participation in the conspiracy.

The court advised Fernandez that he faced a five-year statutory minimum sentence and a possible 160 year maximum sentence for the crimes to which he was pleading guilty. The court also explained that Fernandez could not withdraw his plea of guilty simply because the sentencing range might be higher than he or his attorney expected. Fernandez stated that he understood the charges, that he was satisfied with his representation and that he knowingly waived his right to trial and the related rights enumerated in Fed.R.Crim.P. 11. During the course of ascertaining the factual basis for the plea, the court asked Fernandez if he was "pleading guilty to the crimes charged in counts one and two because, in fact, [he was] guilty of the crimes charged in counts one and two," and Fernandez replied affirmatively. Plea Tr. at 19. The court then accepted and entered Fernandez's guilty plea to both counts of the indictment on May 10, 1989.

In September, 1989, after receiving the presentence report containing the calculated sentencing range under the sentencing guidelines, Fernandez' attorney notified the Court that his client now took the position that he was innocent and that he wished to move to withdraw his guilty plea. Counsel

stated that since one of the grounds asserted by Fernandez as a basis for withdrawing his plea was ineffective assistance of counsel, he wished to withdraw from the case. The Court allowed a substitution of counsel and permitted the defendant to move to change his plea. On November 29, 1989, the present motion pursuant to Fed. R.Crim.P. 32(d) followed.

## II. DISCUSSION

■■■ It is well settled that a defendant has no absolute right to withdraw his guilty plea. *United States v. Figueroa*, 757 F.2d 466, 475 (2d Cir.), *cert. denied*, 474 U.S. 840, 106 S.Ct. 122, 88 L.Ed.2d 100 (1985). *Accord Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970). A motion pursuant to Fed.R.Crim.P. Rule 32(d) to withdraw a guilty plea may be granted only if (1) the motion is made before sentencing, (2) "valid grounds" for the withdrawal exist, and (3) granting the motion would be "fair and just" considering any prejudice the government may suffer as a result. *See United States v. Figueroa*, 757 F.2d at 475. Whether to grant the motion falls within the broad discretion of the trial court. *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989). Furthermore, when the defendant has failed to show valid grounds in support of his withdrawal motion, the government need not demonstrate that withdrawal of the plea would prejudice it. *United States v. Saft*, 558 F.2d 1073, 1083 (2d Cir.1977).

■■■ In deciding whether or not to grant a withdrawal motion, the court should balance each of the three elements articulated in *Figueroa* to reach the most equitable result. An analysis of each prong of the *Figueroa* test follows.

### A. The Timing of the Plea Withdrawal Application.

Fernandez has yet to be sentenced; therefore, his plea withdrawal application would, at first blush, seem to pass the first test of *Figueroa*, namely that it come prior to sentence. Significantly, however, *Figueroa* was decided in 1985, two years before the effective date of the sentencing guidelines and related procedures that apply in this case. Under these procedures, a defendant is provided with a copy of the presentence report which contains the sentencing range under the guidelines that, except for an unlikely departure by the trial judge, determines the minimum and maximum sentences he could receive. Thus, in a guidelines case a defendant now knows what his minimum sentence is likely to be before the judge actually sentences him. *Figueroa*'s first requirement for plea withdrawal, that it be before sentencing, was designed to ensure that a defendant who wished to withdraw his plea was doing so for reasons other than merely to obtain a second chance after learning his sentence. Such an improper motive can now be ascribed to a defendant who waits to withdraw his plea until after learning his sentencing range from the presentence report.

In this case, Fernandez did not indicate to the Court any desire to withdraw his plea until more than four months after trial and after he had been furnished with a copy of his presentence report which set forth a guideline range of 63 to 78 months. Thus, Fernandez' argument that he has satisfied the first test of *Figueroa*, by moving to withdraw his plea prior to sentence, loses much of its force. Fernandez has satisfied *Figueroa*'s first test only in the most technical sense.

### B. The Existence of "Valid Grounds" for the Withdrawal.

■■■ In ascertaining whether a defendant has demonstrated that valid grounds support his motion to withdraw his guilty plea, the court should consider the following factors: the length of time between the plea and the withdrawal motion; the reasons why the grounds for the withdrawal were not presented to the court during earlier proceedings; the circumstances surrounding the plea, including the nature and background of the defendant or any admissions of guilt defendant may have made; and whether the defendant has asserted and maintained his innocence. *See United*

*States v. Spencer*, 836 F.2d 236, 239–240 (6th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1736, 100 L.Ed.2d 200 (1988).[2] The Court examines these factors in turn.

### 1. Length of Time between Plea and Withdrawal Motion.

A motion to withdraw a guilty plea made shortly after the plea was entered may indicate that the plea was entered impulsively, justifying withdrawal. *See United States v. Barker*, 514 F.2d 208 (D.C.Cir.), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975) (swift change of heart indicates plea made in haste or confusion). In the instant case, four months passed between Fernandez's guilty plea on May 10, 1989 and his desire to withdraw that plea first articulated in September, 1989. Four months is simply too long a period to support a claim that the plea was made in haste or confusion. *See United States v. Spencer*, 836 F.2d at 237 (five weeks not prompt enough to warrant withdrawal); *see also United States v. Carr*, 740 F.2d 339, 345 (5th Cir.1984) (twenty-two days not swift enough); *see also Nunez Cordero v. United States*, 533 F.2d 723, 726 (1st Cir.1976) (two weeks not quick enough).

■ Fernandez waited until after reading the Probation Department's sentence calculation before deciding he was confused about the ramifications of his guilty plea. Without more, such a four month delayed protestation of innocence does not warrant withdrawal of the plea. *See United States v. Michaelson*, 552 F.2d 472, 475–476 (2d Cir.1977) (defendant's "change of mind", two months after plea entered and one day after learning sentence calculation, alone, is insufficient grounds to grant withdrawal).

### 2. Why the Grounds for Withdrawal Were Not Presented Earlier and the Circumstances Surrounding the Plea.

■ The amount of time which has elapsed between the plea and the withdrawal motion is directly correlated with the amount of evidence a defendant must proffer to support his motion. *See United States v. Barker*, 514 F.2d at 222 (supporting evidence must have considerable force where motion to withdraw follows eight months after plea). The court must consider why the defenses put forward in the motion to withdraw were not raised at the time of the original pleading. *United States v. Needles*, 472 F.2d 652, 656–658 (2d Cir.1973). Fernandez proffers little to justify his four month delay in seeking to withdraw his plea and nothing which could not have been asserted earlier.

■ Fernandez's current protestations of innocence do not negate his open admission of guilt in court or the factual record supporting that plea. *United States v. Saft*, 558 F.2d at 1082. Fernandez claims that his guilty plea was not "knowingly or voluntarily" entered as required by Fed.R. Crim.P. 11(d), because he was pressured and misled by his prior attorney and family, which caused him to be confused when he pled guilty. Fernandez offers no explanation for why he failed to raise this claim soon after his allocution on May 10, 1989, or for why he waited *six months* to first assert this claim in his withdrawal motion. This claim of pressured confusion is unpersuasive, particularly when it is juxtaposed with his clear statements on the record. *United States v. Sweeney*, 878 F.2d at 70.

Fernandez offers the supposed error of his former counsel in estimating his sentence as additional proof that his guilty plea was not knowingly and voluntarily entered. The Second Circuit has recently held, however, that counsel's inaccurate estimate of his client's guideline range is not a sufficient ground to permit withdrawal of a guilty plea. *Id.* at 70. Rule 11 requires only that the mandatory minimum sentence required by law, if any, and the maximum possible sentence be told to the defendant, and not every imaginable permutation

---

**2.** The Sixth Circuit's multi-part test is a combination of factors that various circuit courts, including the Second Circuit have enunciated as being relevant to an analysis of "valid grounds".

*See, e.g. United States v. Needles*, 472 F.2d 652 (2d Cir.1973), *United States v. Saft*, 558 F.2d 1073 (2d Cir.1977), and *United States v. Figueroa, supra.*

thereof. *See Hunter v. Fogg*, 616 F.2d 55, 60 (2d Cir.1980). Moreover, any misimpression Fernandez may have had as to his sentence after consulting with counsel was clarified by the court in the plea proceeding. The court specifically advised Fernandez of the five year mandatory minimum sentence applicable to the crimes with which he was charged. In addition, the court explicitly told Fernandez his lawyer's inaccurate predication of the guideline range would not be grounds to withdraw his guilty plea.

Fernandez also argues that his unfamiliarity with the criminal justice system and his limited knowledge of English prevented him from understanding the ramifications of his plea. This argument is frivolous. Although Fernandez had a limited knowledge of English, certified interpreters translated the proceedings. More importantly, at the plea Fernandez acknowledged that he understood the charges against him and the possible length of his sentence.

The circumstances surrounding Fernandez's plea allocution and the testimony given therein create a formidable barrier to any claim of innocence. Fernandez's delay in asserting such a claim makes his task all the more difficult. He simply has failed to adduce evidence with the "considerable force" needed to support a withdrawal motion filed months after a plea is entered.

3. **Whether Defendant Asserted and Maintained His Innocence.**

■ A mere assertion of innocence is per se insufficient to support a motion to withdraw a guilty plea. *United States v. Acevedo–Ramos*, 810 F.2d 308, 312 (1st Cir. 1987). The court must be convinced that there are legally cognizable defenses to the crime charged to exculpate the defendant before a Rule 32(d) motion may be granted. *Id.* Fernandez correctly argues that a denial of guilt during pre-sentence investigation may be grounds to set aside a guilty plea. However, he fails to recognize the presumption of truthfulness which open, solemn statements under oath carry. *See United States v. Gomez–Gomez*, 822 F.2d

1008, 1011, *reh. denied en banc*, 829 F.2d 1132 (11th Cir.), *cert. denied*, 484 U.S. 1028, 108 S.Ct. 755, 98 L.Ed.2d 767 (1987); *see also Brady v. United States*, 397 U.S. at 757, 90 S.Ct. at 1473 (guilty plea is a "grave and solemn act", "accepted only with care and discernment").

■ Fernandez's reliance on *Gomez–Gomez* is misplaced. In that case, the court set aside defendant's plea agreement because his denial of guilt during the pre-sentencing investigation and again under oath cast doubt on the factual basis for the original plea. By contrast, Fernandez testified to his guilt under oath during his plea allocution and never denied his participation in the conspiracy, however limited it might have been, during the presentence investigation. Fernandez current claim of innocence appears to be nothing more than a conclusory allegation, which does not support a withdrawal motion. *See United States v. Spencer*, 836 F.2d at 237.

*C. Prejudice to the Government.*

■ Despite defendant's failure to demonstrate any valid grounds supporting the motion to withdraw his guilty plea, in balancing the equities, a court may still choose to allow the withdrawal if little or no prejudice to the government would result. *United States v. Acevedo–Ramos*, 810 F.2d at 313, 315; *accord United States v. Saft*, 558 F.2d at 1083. Here the prejudice is manifest. The defendant already put the government to its burden and then on the eve of summations changed his mind and entered a guilty plea presumably because he did not like the way things were going. Although the government might be able to reconstruct its case with little difficulty, the preparation for trial and presentation to a new jury would place an unwarranted burden on important judicial and prosecutorial resources when the defendant has presented no valid grounds for another trial. *See United States v. Collado–Gomez*, 674 F.Supp. 426, 429 (E.D.N.Y.1987), *aff'd*, 854 F.2d 1315 (2d Cir.1988) (prejudice not insubstantial where co-defendant tried and convicted and new trial, albeit short, would be required). To allow Fernandez to with-

draw his guilty plea in the circumstances of this case would undermine confidence in the integrity of judicial procedures, increase the volume of judicial work, and delay and impair the orderly administration of justice. *See United States v. Sweeney,* 878 F.2d at 70.

### III. CONCLUSION

For the reasons set forth above, defendant's motion to withdraw his guilty plea pursuant to Fed.R.Crim.P. 32(d) is denied.

SO ORDERED.