**Gideon LEAKS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 92 Civ. 6634 (KTD).

United States District Court, S.D. New York.

Jan. 26, 1994.

Gideon Leaks, pro se.

Mary Jo White, U.S. Atty., New York City (Elizabeth Martinez, Allen D. Applbaum, Asst. U.S. Attys., of counsel), for respondent.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Petitioner Gideon Leaks ("Leaks") moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct a sentence imposed by the United States District Court for the Southern District of New York on September 19, 1990 (Walker, J.). On January 10, 1990, after a seven-day jury trial, Leaks was found guilty of committing and attempting to commit 17 bank robberies in Manhattan between December 1988 and July 1989 in violation of 18 U.S.C. § 2113(a) and (d). *United States v. Gideon Leaks,* S 89 Cr. 607.[1] On September 19, 1990, Judge Walker sentenced Leaks to 120 months of imprisonment, to be followed by five years of supervised release,

and he ordered Leaks to pay $88,931 in restitution as well as a special assessment of $50 on each of the 17 counts of conviction. Leaks is currently serving his sentence. For the following reasons, Leaks' petition is denied in its entirety.

### BACKGROUND

The evidence at trial established that from December 1988 through July 1989, Leaks committed and attempted to commit 17 bank robberies. When committing these robberies, Leaks regularly followed a signature pattern. He would enter a bank, pretend to fill out a bank deposit or withdrawal slip, proceed into the feeder line and wait there until a bank teller who was close to an exit was available to assist him. Once at the teller window, Leaks would hand the victim/teller a bank robbery note, demanding a specified amount of cash.

Thirteen witnesses to ten of the robberies positively identified Leaks in court. Each of these witnesses as well as two additional witnesses had previously picked Leaks out of photographic arrays. Surveillance photographs from four of the robberies provided further evidence that Leaks had committed these robberies. In addition, notes from ten of the robberies were recovered. A handwriting expert concluded that each of these notes was written by Leaks. Based on this as well as other evidence,[2] a jury found Leaks guilty of committing and attempting to commit the 17 bank robberies.

Leaks appealed to the United States Court of Appeals for the Second Circuit, challenging his conviction on three grounds. First, Leaks argued that Judge Walker erred in denying his pretrial motion to sever the bank robbery counts into separate trials. Second, Leaks contended that Judge Walker impermissibly interfered with a government witness. Leaks' final argument was that Judge

1. An indictment was filed on December 7, 1989 in 19 counts. On January 8, 1990, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, Judge Walker entered a judgment of acquittal on two firearms charges.

2. Evidence was also introduced as to how Leaks spent the otherwise unexplained proceeds of his crimes. In particular, after the first few bank

robberies, Leaks sojourned in Paris, France. After two robberies on a single day, Leaks spent $13,722 in cash to lease a new BMW automobile. Between June 13, 1989 and July 7, 1989, Leaks paid over $11,000 in bills with numbered money orders that had been stolen during Leaks' final robbery on June 13, 1989.

Walker abused his discretion in not awarding him a two-point reduction and in misapplying the United States Sentencing Guidelines. The Court of Appeals affirmed Leaks' conviction in an unpublished opinion. *United States v. Gideon Leaks,* 930 F.2d 911 (2d Cir.1991).

Thereafter, Leaks brought the instant petition. Leaks raises ten related arguments challenging his conviction. These ten arguments actually state five grounds for relief: (1) the search of Leaks' home was illegal and in violation of his right to be free from an unreasonable search under the Fourth Amendment;[3] (2) the evidence presented at trial was insufficient to convict Leaks under 18 U.S.C. § 2113; (3) the assistant United States attorney's conduct was improper during rebuttal summation; (4) Judge Walker incorrectly charged the jury; and (5) Leaks received ineffective assistance of counsel.

## DISCUSSION

**(1)** *Failure to Raise Claims on Direct Appeal*

 Failure by a convicted criminal to raise a claim on direct appeal constitutes a procedural default that bars collateral review under § 2255 absent a showing of: (1) "cause" for the failure to raise the claim, and (2) actual "prejudice" from the alleged violation on which the claim is based. *Campino v. United States,* 968 F.2d 187, 190 (2d Cir. 1992). To establish "cause", Leaks must show "something *external* to the petitioner, something that cannot be fairly attributed to him." *Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (emphasis in original). If a petitioner establishes "cause", he must also demonstrate "prejudice" in order to overcome this procedural bar. *Campino,* 968 F.2d at 190. The "prejudice" must be so substantial that it undermines the integrity of the entire trial.

*United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982). This implies that fundamental miscarriage of justice has occurred and that the "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).

Leaks has made no independent attempt to establish "cause" for his failure to raise on direct appeal the claims raised through this petition. Indeed, Leaks cannot show "cause" because his claims are based on facts and legal principles that were available to him during the direct appeal of his conviction and sentence. *See id.* at 486, 106 S.Ct. at 2644 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."). *See also Harmon v. Barton,* 894 F.2d 1268, 1275 (11th Cir.) (*pro se* status does not constitute "cause"), *cert. denied,* 498 U.S. 832, 111 S.Ct. 96, 112 L.Ed.2d 68 (1990).

Leaks argues that the failure of his attorney to provide effective assistance at trial is the "cause" for his failure to raise these claims on direct appeal. *See* Leaks' Traverse Br. at 4. Whether Leaks' counsel was ineffective at trial does not establish "cause" for his failure to raise these claims on appeal. Instead, Leaks must show that his counsel's performance *on appeal* was ineffective to establish "cause". *See Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. Because his argument fails to establish how his counsel's alleged ineffectiveness caused the failure to raise these claims on direct appeal, Leaks has not demonstrated "cause". Accordingly, Leaks is procedurally barred from raising most of these claims through a § 2255 motion. *Campino,* 968 F.2d at 190.

---

**3.** The first six of these ten arguments are redundant. Leaks claims that the government remained in his home after his arrest and before a search warrant was obtained, thereby violating the Fourth Amendment. In one argument, he claims that Judge Walker erred when denying his motion to suppress evidence discovered as a result of this search. In a second argument, he contends that the fruits of this search were im-permissibly used against him at trial. In short, all six of these claims flow from two principle arguments: (1) the agents illegally occupied his apartment prior to the execution of a search warrant, and (2) F.B.I. agents used illegally obtained evidence in securing a search warrant. Thus, although these six claims are separated by Leaks, they are essentially one argument, and I will treat them as such.

A lenient and expansive reading of Leaks argument, however, is that his counsel was ineffective at trial on these claims, and as a result, his counsel was also ineffective on appeal when he failed to raise these same claims. Consequently, Leaks argues that this failure amounts to ineffective assistance on appeal, thereby establishing "cause". *See Murray,* 477 U.S. at 488–89, 106 S.Ct. at 2645–46 (ineffective assistance on appeal constitutes "cause" to overcome procedural default on a § 2254 petition).[4]

■ A defendant is constitutionally entitled to effective assistance of counsel as a matter of right during the first appeal. *Evitts v. Lucey,* 469 U.S. 387, 397, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). The essence of an ineffective assistance claim is that counsel's professional errors so upset the adversarial balance between defense and prosecution that the proceeding was unfair and the judgment thereby rendered suspect. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *United States v. Cronic,* 466 U.S. 648, 655–57, 104 S.Ct. 2039, 2044–46, 80 L.Ed.2d 657 (1984). Although the *Strickland* test was enunciated in the context of a claim of inadequate representation arising from an attorney's performance at trial, it is also applicable to claims directed at appellate representation. *Abdurrahman v. Henderson,* 897 F.2d 71, 74 (2d Cir.1990).

■ A strong presumption exists that counsel's performance was reasonable. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990). In order to overcome this presumption, a petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2)

there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2065, 2068. Thus, in order to establish "cause", Leaks must show that his counsel's failure to raise these issues on appeal fell below an objective standard of reasonableness and that had these claims been raised on direct appeal, the Court of Appeals' determination, affirming the conviction, would have probably been different.

■ In order to determine whether his counsel's failure to raise these issues on appeal amounts to ineffective assistance, it is necessary to inquire as to whether these claims would have had any merit on appeal had they been raised. An attorney's decision not to raise meritless claims on appeal can never rise to the level of ineffective assistance of counsel. Indeed, raising meritless claims actually has the adverse effect of diluting the force of stronger arguments. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). Thus, it is necessary to estimate the apparent strength of these claims in order to determine whether counsel's failure to raise them fell below the standard of reasonableness and whether the result of the appeal would have been different had he raised them.[5] An examination of these issues establishes that Leaks' claims have no merit. As a result, the decision not to appeal these issues did not amount to ineffective assistance of counsel. Leaks has, therefore, failed to establish either "cause" or "prejudice".

### (a) *Fourth Amendment Claim*

■ Leaks claims that: (1) the search of his premises was illegal, as no warrant for the search had been issued; (2) the govern-

---

**4.** I deal with separate issue of ineffective assistance of counsel at trial below.

**5.** I proceed to the merits of Leaks' claim with much trepidation. The effect of such an inquiry is to remove the procedural bar for failure to raise the claim on appeal. This tactic gives § 2255 petitioners an easy way to circuitously do that which they could not do directly, i.e., have the merits of their claim addressed collaterally. A petitioner can simply contend that their counsel was ineffective on appeal in order to have the merits of a claim addressed. I, however, see no

way to determine whether counsel's failure to raise these claims on direct appeal was "ineffective" other than to estimate the strength of these claims. The Court of Appeals has yet to offer guidance on whether a trial court should proceed to examine the merits of a claim where the petitioner contends that the "cause" of his failure to raise these issues on appeal was ineffective assistance of counsel. Thus, I proceed, erring on the side of caution, by examining the merits of the claims to determine if "cause" exists.

ment unlawfully remained· on his premises prior to the execution of a search warrant; (3) the government obtained evidence while illegally on his premises in order to secure a search warrant; and (4) evidence obtained from this allegedly illegal search was impermissibly admitted at trial.[6] As a result of this, Leaks contends that Judge Walker erred when he denied petitioner's motion to suppress the evidence obtained during the search of his apartment.

A search warrant was issued and lawfully obtained. A copy of the warrant has been provided to the court and Leaks by Assistant United States Attorney Elizabeth Martinez ("AUSA Martinez"). Thus, Leaks' argument that the search was illegal because no search warrant was issued is totally devoid of merit.

Leaks also contends that the government agents unlawfully remained on his premises prior to executing the search, and through this, they illegally obtained evidence that was used in securing a search warrant. Leaks was arrested by F.B.I. agents at his apartment in Jersey City, New Jersey, at about 6:30 a.m. on July 12, 1989. Due to an administrative delay, a warrant authorizing a search of the premises was not obtained until 7:45 p.m. In the interest of securing the apartment and any evidence within it, F.B.I. agents occupied the apartment for the 13 hours between Leaks' arrest and the execution of a search warrant. An F.B.I. agent testified that the decision to occupy Leaks' apartment prior to the execution of a search warrant was dictated, in part, by the fact that his apartment was accessible by a second entrance from a terrace that leads to the roof of the building. According to the agent, the terrace was "roof level." Tr. at 414. Leaks points out that the terrace outside his apartment is not technically level with the roof of his apartment building, and he claims the agent lied in order to justify the decision to secure the apartment from within rather than posting agents outside it. Petitioner's Br. at 4.

No question exists as to the legality ·of the entry into Leaks' apartment. *See Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980). The issue is whether remaining on the property to secure the premises was objectively reasonable. *United States v. Segura*, 663 F.2d 411, 417 (2d Cir.1981). *See also Maryland v. Buie*, 494 U.S. 325, 333, 110 S.Ct. 1093, 1097, 108 L.Ed.2d 276 (1989) (applying reasonableness test to determine lawfulness of search conducted as part of a "protective sweep"); *United States v. Hernandez*, 738 F.Supp. 779, 781 (S.D.N.Y.1990) (same). The evidence establishes that Leaks lived on the top floor of his apartment building, and access to his apartment from the roof through the terrace existed. The decision to secure the apartment from within was, therefore, objectively reasonable. Thus, the evidence obtained while securing the apartment, i.e., certain items of clothing while in "plain view" of the agents, was an appropriate basis for the issuance of a search warrant.

▪ More importantly, evidence other than that obtained during the securing of Leaks' apartment was also offered to obtain the search warrant. For instance, two FBI Agents recognized Leaks, when they first saw him, as the person on bank surveillance film. Tr. at 425. Therefore, probable cause for a search warrant existed without this allegedly tainted evidence. *See* Tr. at 429. *See Segura v. United States*, 468 U.S. 796, 813–16, 104 S.Ct. 3380, 3390–91, 82 L.Ed.2d 599 (1983) (ruling that even if entry was illegal, the challenged evidence was still admissible because an independent source for the warrant under which the evidence was seized existed). In this case, even if remaining on the premises was illegal, which it was not, the evidence seized was still admissible, as an independent source for the warrant existed. Accordingly, the evidence from this search was admissible, and there is no merit to the claim that Judge Walker should have suppressed the evidence. Thus, Leaks' counsel's decision not to pursue this claim on

---

**6.** Leaks also charges that several F.B.I. agents committed perjury when they testified at trial regarding the securing of Leaks' apartment, in violation of criminal statutes. Of course, only the government has the power to indict anyone for perjury. His arguments, however, are incorporated into the arguments regarding the alleged illegality of the search.

direct appeal does not fall below an objective standard of reasonableness.

### (b) *Insufficiency of Evidence*

█ Leaks claims that the evidence was insufficient to convict him of the armed robbery counts pursuant to 18 U.S.C. § 2113(a), (d). To succeed on this claim, Leaks must show that no rational jury could have found beyond a reasonable doubt that he possessed a gun while committing the robberies. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *United States v. Lindsay,* 985 F.2d 666, 672 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993). The record is replete with testimony that Leaks had a gun while committing the robberies. *See, e.g.,* Tr. at 100, 104–05, 107, 128–30, 245 and 250. The jury's verdict in this case was a rational one and, therefore, must stand. Thus, Leaks has failed to show this claim had any merit, and his counsel's decision not to appeal this issue did not fall below an objective standard of reasonableness.

### (c) *Prosecutorial Misconduct Claim*

█ Leaks complains that AUSA Martinez' rebuttal summation was reckless, amounting to prosecutorial misconduct, because she made allegations unsupported by the evidence. Prosecutorial misconduct must be so egregious that it amounts to a denial of constitutional due process in order for a sentence to be vacated. *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986); *Donnelly v. DeChristoforo,* 416 U.S. 637, 647–48, 94 S.Ct. 1868, 1873–74, 40 L.Ed.2d 431 (1974); *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990). The alleged misconduct here, if it can be called that, comes no where near this level of egregiousness. Thus, Leaks has failed to show that this claim would have had any merit on appeal. As a result, his counsel's decision not to appeal this issue did not fall below an objective standard of reasonableness.

### (d) *Jury Instructions Claim*

Leaks contends Judge Walker's charge was improper because it: (1) failed to explain why two of the armed robbery counts were dismissed; (2) identified two witnesses, thereby elevating their credibility in the jury's mind; and (3) allowed the jury to consider similarities between the different robberies.

█ Judge Walker ruled that the government had not presented enough evidence to submit to the jury two of the armed robbery counts. Consequently, he dismissed these counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure. He explained to the jury that two of the counts were no longer part of the case for reasons that did not concern them. (Charge at 16). Leaks complains that the jury should have been informed about the reasons for the dismissal because the dismissal "was, in itself, evidence that was favorable to the defendant." Petitioner's Br. at 33.

█ First, the reasons for a dismissal of an alleged crime is not evidence as to another alleged crime. *See United States v. Everett,* 825 F.2d 658, 660 (2d Cir 1987), *cert. denied,* 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988). More importantly, had Judge Walker explained the reasons for the dismissal, the jury could have interpreted his decision to mean that he believed the evidence was sufficient for a conviction on the other counts, thereby creating an impermissible inference. Indeed, such an explanation could have had an adverse effect on Leaks' case. Thus, Leaks' claim that Judge Walker should have explained the reasons for the dismissals in his charge is without merit.

█ Leaks' second claim regarding Judge Walker's charge is similarly without merit. Judge Walker stated in his charge that "the government alleges that the defendant assaulted or placed in jeopardy the life of the victim tellers in Counts One and Twelve, that is, Abid Akram and Walberto Rivera, by threatening him with a gun." (Charge at 23). Leaks claims that by mentioning these two witnesses while not mentioning other witnesses, who allegedly contradicted Akram and Rivera, Judge Walker improperly enhanced the credibility of these witnesses. Petitioner's Br. at 33–34. Judge Walker's statement simply identifies the al-

leged victim tellers. The statement in no way arises to the level necessary to be deemed improper. Moreover, Judge Walker instructed the jury that they alone were to determine the facts of the case and that if they believed that he had expressed or intimated an opinion on any issue of fact, they were to disregard it. (Charge at 4). Thus, there is no merit to Leaks' claim that Judge Walker erred by identifying these two witnesses.

■ Finally, evidence of similar acts to prove identity is admissible to prove that the defendant was the one who committed the acts charged. *United States v. Connor*, 580 F.2d 38, 42 (2d Cir.1978). Such proof may be received only if the similar acts are so unique and distinctive as to be a "signature." *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir.1978). As discussed above, the government presented much evidence to establish that Leaks followed a signature pattern while committing these robberies. Judge Walker instructed the jury that if they determined that Leaks committed one of the robberies, they could also consider similarities as to other robberies on the issue of identification, but only if they determined the separate robberies were so identical "as to earmark the handiwork of the defendant." (Charge at 15). This instruction was unquestionably appropriate. *See Connor* 580 F.2d at 42. As such, Leaks claim that Judge Walker's charge was improper is devoid of merit.

■ In sum, Leaks has failed to show that when exercising his professional judgment concerning the issues to be raised on appeal, his counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Moreover, because these claims are merit-

less, Leaks has failed to demonstrate that there is a reasonable probability that the result of his appeal would have been different had these claims been raised. *Id.* at 694, 104 S.Ct. at 2068. Thus, neither element of the *Strickland* test has been satisfied. Leaks' counsel was not ineffective on appeal, and Leaks has failed to establish "cause" for the failure to raise these claims directly on appeal.[7] Accordingly, Leaks is procedurally barred from raising these claims collaterally through a § 2255 petition.

(2) *Ineffective Assistance of Counsel at Trial*

■ The Court of Appeals recently ruled that a claim of ineffective assistance of counsel on § 2255 petition is not procedurally barred unless: (1) the petitioner was represented by new appellate counsel on direct appeal, and (2) the claim is based solely on the record developed at trial. *Billy–Eko v. United States*, 8 F.3d 111, 116 (2d Cir.1993). In this case, Leaks was represented by the same counsel at trial and on appeal. Thus, Leaks' final argument that his counsel was ineffective at trial is not procedurally barred. As enunciated above, in order to establish ineffective assistance of counsel at trial, a petitioner must: (1) demonstrate that his counsel's representation fell below an "objective standard of reasonableness" under "prevailing professional norms"; and (2) affirmatively prove "prejudice," that is, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687–88, 693–94, 104 S.Ct. at 2064–65, 2067–68.

Leaks points to four separate instances of alleged ineffectiveness at trial on the part of his attorney to support his claim that he was denied effective assistance of counsel. First, he argues that his attorney failed to call

---

7. It is unnecessary to address whether Leaks was prejudiced in this case, as he has failed to establish "cause". *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Campino*, 968 F.2d at 190. The "prejudice" test for the procedural bar, however, and the *Strickland* "reasonable probability" test are very similar. *Compare Frady*, 456 U.S. at 169, 102 S.Ct. at 1595 (habeas "prejudice" standard is whether the alleged error "so infected the entire trial that the resulting conviction violates

due process"), with *Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069 ("the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged"). Thus, because Leaks has failed to demonstrate that there was a reasonable probability that the Court of Appeals would have ruled differently had these claims been raised on appeal, he has also failed to establish that he was prejudiced by the alleged violations on which his § 2255 petition is based.

witnesses to testify on his behalf. Second, Leaks contends that his attorney failed to request the services of a handwriting expert to analyze notes that linked Leaks to the robberies. Third, he contends that his attorney was ineffective in his cross-examination of three F.B.I. agents. Finally, Leaks claims that his attorney failed to determine whether a search warrant was obtained prior to the search of his home.

The first three arguments regarding his attorney's performance at trial are decisions that "fall squarely within the ambit of trial strategy," and, if reasonably made, cannot support an ineffective assistance claim. *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). Leaks argues that his attorney failed to call witnesses for the defense because his attorney "did not find out if there were any other witnesses other than those called by the government." Petitioner's Br. at 39. Leaks, however, does not identify anyone who could have testified on his behalf. Indeed, he presents no one who could have provided exculpatory evidence, leaving me to conclude no such witness existed. A lawyer's role is not to create witnesses out of thin air. Certainly, failure to do so does not amount to ineffective assistance of counsel. Simply, it is a reasonable tactical decision to rely on attacking the government's witnesses rather than calling witnesses who will be subject to cross-examination by the government. *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993). *See also Nersesian*, 824 F.2d at 1321 ("[T]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial."). Moreover, because he has failed to present the names of any witnesses who would have testified on his behalf, Leaks has failed to establish any "prejudice".

Leaks next claims that his attorney's failure to request the services of a handwriting expert to independently analyze the notes recovered at the scene of some of the robberies amounts to ineffective assistance of counsel. According to the government's handwriting expert, these notes linked Leaks with the crime. Leaks argues that: "[i]f the defense had called its own handwriting expert, there is a possibility the defense experts [sic] conclusions would have differed from those of the government's expert." Petitioner's Br. at 41. This argument is nothing more than mere speculation. Counsel's decision not to request the services of an expert cannot be considered objectively unreasonable when Leaks has only presented his vague hope that another expert might have reached a different result than the government expert.[8] Thus, relying on a cross-examination of the government's handwriting expert was a reasonable tactical decision. *Eisen*, 974 F.2d at 265. More importantly, as this claim is purely speculative, Leaks has also failed to show that any "prejudice" occurred as a result of his lawyer's strategic decision not to retain another handwriting expert.

Leaks also claims that his attorney was ineffective in his cross-examination of government witnesses. He claims his attorney failed to expose inconsistencies in the testimony of three F.B.I. agents concerning the layout of the defendant's apartment and the location of the Federal Magistrate from whom the agents obtained a search warrant.

It was not objectively unreasonable for Leaks' attorney to decide not to cross-examine these witnesses on these issues. Leaks' attorney probably recognized that when the agent testified that the terrace was "roof level," she meant that Leaks' apartment was near the roof of the building. Further, even if Leaks is correct in a literal sense, the focus of this inquiry was whether Leaks' apartment was accessible from a second entrance in the rear of the apartment. Given all the testimony on this issue, it was possible that someone on the roof of the building could have gained access to Leaks' apartment through the terrace. Therefore, counsel's failure to pursue this relatively unimportant

---

**8.** It is also *possible* that another handwriting expert would have concluded that the notes were indeed in Leaks' handwriting, thereby further supporting the apparently irrefutable assertion that Leaks was the one who wrote the notes and committed the charged crimes.

detail further was not objectively unreasonable.[9]

Leaks also points to discrepancies in the testimony of two agents as to the location of the Federal Magistrate from whom the search warrant was eventually obtained. One agent testified that the search warrant was obtained in Newark, while another testified that it was Plainsboro. Tr. at 398, 421. Given the inconsequential nature of this discrepancy, it is certainly not unreasonable that an attorney would decide not to cross-examine a witness on this issue. This issue was simply irrelevant to the central inquiry, which was whether the search of Leaks' apartment was lawful. The location where the warrant was obtained has no bearing on this matter. Thus, the decision not to cross examine the agents on this issue does not amount to ineffective assistance of counsel.

Finally, Leaks claims that his attorney's failure to investigate whether a search warrant was ever issued, authorizing a search of his home, amounts to ineffective assistance of counsel. As discussed above, a valid search warrant was issued. Therefore, his counsel's decision not to investigate this matter obviously does not amount to ineffective assistance of counsel.

Most important of all, to my mind, Leaks has failed to show that there was a reasonable probability that the result of his trial would have been different had his attorney been "effective". *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. An overwhelming amount of evidence was presented to an impartial jury, thereby convincing them that Leaks was indeed guilty of the crimes charged. The simple truth is that even had Leaks' counsel done everything that Leaks claims was constitutionally necessary, he would still be where is today: in jail. In sum, Leaks failed to meet his burden of demonstrating deficient performance and

prejudice. *Id.* at 687, 694, 104 S.Ct. at 2064, 2068. His argument that his counsel provided ineffective assistance at trial must fail.

For the foregoing reasons, Leaks' motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence is denied.[10]

SO ORDERED.

---

**9.** Even assuming that it was unreasonable for a defense attorney to pass over this inconsistency, Judge Walker ruled alternatively that even if there had been some illegality in the arrest, the search was still lawful as it was based on a lawfully executed warrant. Tr. at 429. This alternative reason for his decision to deny Leaks' suppression motion completely eliminates any "prejudice" to Leaks that may have been caused by his attorney's cross-examination of government witnesses. *See Segura*, 468 U.S. at 813–16, 104 S.Ct. at 3390–91.

**10.** Leaks has recently moved for summary judgment on this petition, requested a transfer of this case, and requested bail. This decision makes these applications moot; as a result, they are denied.