**UNITED STATES of America**

v.

**Paul MORALES, Jesus Rodriguez, Genario Rosa, Joseph Warfield, Defendants.**

**No. 97 CR. 829(JSR).**

United States District Court, S.D. New York.

May 5, 1998.

Jennifer Moore, Asst. U.S. Atty., New York, NY, for plaintiff.

Raymond L. Colon, New York, NY, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

On January 9, 1998, after four and a half days of a bench trial, defendant Paul Morales pled guilty to possessing a large quantity of heroin, in violation of 21 U.S.C. § 841(a) and 841(B)(1)(B), and to being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). On March 18, 1998, Morales, having retained new counsel, filed a motion to withdraw his plea pursuant to Fed.R.Cr.P. 32(e), or to obtain an evidentiary hearing so as to determine whether or not there was a basis for withdrawal of his plea. Aff. and Mem. of Raymond L. Colon, Esq., in Support of Request for Leave to Withdraw Guilty Plea, at ¶¶ 6, 10. Because Morales, despite considerable latitude from the Court, has failed to make even a prima facie showing of a basis for his motion, the motion must be denied.

By way of background, Indictment 97 Cr. 829, filed August 21, 1997, charged Morales and three co-defendants with conspiring to distribute, and with possession with intent to distribute, substantial quantities of heroin. In addition, Morales was charged with the ammunition charge, *ante*. Prior to trial, Lawrence Herrmann, Esq., then counsel for Morales, moved to suppress certain evidence and, in conjunction therewith, moved for inspection of the personnel file of one of the arresting officers, New York City Police Officer Louis Delli–Pizzi,[1] speculating that the file might contain information from other cases damaging to Delli–Pizzi's credibility. However, at the outset of the evidentiary hearing on Morales' motion on November 10, 1997, Mr. Herrmann stated that, despite diligent efforts, he had been unable to obtain meaningful information supporting his request for the inspection of Delli–Pizzi's personnel file. Tr. 11/10/97 Hearing, at 4. Accordingly, the Court denied that prong of the motion without prejudice.[2] *Id.*

Thereafter, Delli–Pizzi took the stand at the suppression hearing and was subject to substantial cross-examination by Morales' counsel. *Id.* at 68–80. At the conclusion of the hearing, the Court denied the other prong of Morales' motion, finding, *inter alia*, that "the testimony of Detective Delli–Pizzi clearly evidences ample probable cause for the search and seizure that occurred." *Id.* at 81–82.

On January 5, 1998, upon waiver of jury trial by all four defendants, a bench trial commenced at which the Government presented the testimony of numerous witnesses, including both arresting officers, *i.e.*, Detective Delli–Pizzi and INS Special Agent Christopher Quinn. Both officers testified that on May 6, 1997, as part of their work for a special task force investigating violent gangs, they went to Apartment 21 at 228 East 116th Street, Manhattan. When they knocked on

---

1. Subsequently Delli–Pizzi was promoted to Detective.

2. The request to inspect the Delli–Pizzi personnel file was never renewed by Mr. Herrmann or by counsel for any of the other defendants.

the door of the apartment and identified themselves as police, they heard someone inside say; "Oh, shit," and also heard sounds of people running about inside the apartment. While Quinn remained at the door, Delli–Pizzi ran upstairs to the roof of the building and subsequently to a landing outside Apartment 21, from where he observed four people, including Morales, throwing from the window what he recognized to be narcotics-related materials, including white powder, glassine envelopes, money, playing cards, baggie boxes, scales, coffee grinders, and what appeared to be a gun.

After one of the persons in the apartment finally opened the door, Quinn and Delli–Pizzi arrested the four defendants. According to the testimony of several Government witnesses, agents who shortly thereafter searched the area beneath the windows of the apartment found, among other things, a gun, bullets, 386 grams of heroin, and various items commonly used for processing and packaging heroin, and also found bullets and other incriminating items inside the apartment.

Detective Delli–Pizzi further testified that after Morales and the other defendants were handcuffed and placed in cars awaiting transport to DEA headquarters, he observed Morales moving about in what Delli–Pizzi perceived to be an effort to reach into his pockets. Delli–Pizzi testified that he thereupon searched Morales' pockets and found, among other things, two .380 caliber bullets similar to those found inside and outside the apartment.

On the fifth day of trial, shortly before the Government was to conclude its case in chief, each of the four defendants pleaded guilty to possessing with intent to distribute the 368 grams of heroin. In addition, Morales pled guilty to the ammunition charge. Four weeks later, on February 3, 1998, the Court was telephonically contacted by Raymond

Colon, Esq. (with the prosecutor also on the line), who stated that Morales wished to substitute Mr. Colon as his counsel and move to withdraw his plea. The substitution of Mr. Colon as Mr. Morales' counsel was formally approved on February 20, 1998.

Despite being given until March 18, 1998 to file his motion for withdrawal of plea, Morales' initial moving papers failed to include the prerequisite affidavit from the defendant (or any other person with personal knowledge) setting forth facts in support of the motion. *See United States v. Gillette*, 383 F.2d 843, 848 (2d Cir.1967). Nevertheless, at the initial hearing of the motion on March 26, 1998, the Court, rather than dismissing the motion, gave Morales an opportunity to supply the missing affidavit, but advised Morales and his counsel that such an affidavit must set forth specific facts warranting the relief sought. Transcript, 3/26/98 Hearing, at 5. *See United States v. Avellino*, 136 F.3d 249, 261 (2d Cir.1998) ("[A] defendant who seeks to withdraw his plea of guilty is not entitled to an evidentiary hearing on the basis of assertions that are simply conclusory.").

Despite this notice, Morales thereafter submitted, as the sole evidentiary support of his motion, a two-page affidavit, dated March 26, 1998, that was very largely conclusory in nature. Nonetheless, at the second hearing of the motion on March 31, 1998, the Court gave Morales still another chance to meet his threshold burden, by inviting him to take the witness stand and provide whatever specific factual allegations he could in support of his motion, without being subject to cross-examination.[3] The Court also granted Morales the further indulgence of permitting him to submit, even after the March 31 hearing, still further threshold material in the form of an affidavit from Morales' wife, Alba Colon, dated March 31, 1998, corroborating certain of Morales' statements.[4] The Court also per-

---

3. Since the purpose of allowing this testimony was simply to determine whether Morales could remedy the deficiencies in his affidavit and provide a prima facie showing that could justify his motion, no cross-examination by the Government was permitted at the time, but the Government was given the right to cross-examine Morales if

the Court thereafter determined that an evidentiary hearing on the motion was warranted.

4. Subsequently, as part of a Sentencing Memorandum seeking a downward departure on Morales' behalf on the grounds of "exceptional family circumstances," counsel for Morales informed the Court that Ms. Colon, under the name Alba

mitted both sides to submit further legal memoranda and to appear once more in court, on April 22, 1998, to orally argue whether Morales had made a sufficient threshold showing to warrant an evidentiary hearing on his motion to withdraw his plea.

■ Having provided Morales with every opportunity to show that he has a legal basis to support his motion, the Court concludes that he has none. In his affidavit of March 26, 1998 ("Morales Aff."), his testimony of March 31, 1998, and his counsel's oral and written arguments, Morales alleges four such bases.[5] First,[6] Morales alleges that Mr. Herrmann failed to tell him that his right to appeal would be limited to "the sentence portion of his conviction." Morales Aff. at ¶ 2.B. This is frivolous, since, at the plea allocution itself, the Court fully explained to Morales that if he pled guilty, he would be giving up entirely his right to appeal his conviction and would only retain, at most, a limited right to appeal his sentence. Morales unequivocally affirmed his understanding of this advice. Tr. 1/9/98 Plea Allocution, at 713. *See United States v. Fernandez*, 734 F.Supp. 599, 603–604 (S.D.N.Y.1990).

■ Second, Morales alleges that Mr. Herrmann "pressured and coerced me into pleading guilty to possession of ammunition (which I did not possess) by cursing me and verbally abusing me both outside the courtroom and at the defense table." Morales Aff. at ¶ 2.D. Quite apart from its vague and conclusory nature,[7] this allegation is contradicted by Morales' own sworn allocution, in which, in response to the Court's full explanation of the meaning of threats and coercion, Morales affirmed that he had not been threatened or coerced into pleading guilty or

"anything like that." Tr. 1/9/98 Plea Allocution, at 730–34. *See United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992).

Moreover, from its own observation of Morales' sophistication and experience as exemplified by his testimony at the March 31 hearing and by his other in-court appearances, the Court finds that the notion that Morales could be coerced by mere name-calling into involuntarily pleading guilty is "inherently incredible" and cannot support his motion. *United States v. Gonzalez*, 970 F.2d at 1100. It may also be noted that Morales' argument in this regard is leveled solely at the ammunition charge; but even if Morales had not pleaded guilty to that charge, he would have faced the same guideline range for sentencing purposes.[8]

■ Third, Morales alleges that, "had Mr. Herrmann credited the testimony of Agent Quinn, he [Herrmann] would have prevented me from pleading guilty to the ammunition possession, since Agent Quinn specifically testified that after I had been placed under arrest, I had no ammunition on me." Morales Aff. at ¶ 2.C. Again, this is contradicted by Morales' own allocution in which he affirmed under oath that he possessed one or more .380 caliber bullets at the time in question. Tr. 1/9/98 Plea Allocution, at 739. Moreover, a review of the trial transcript shows that Morales' affidavit materially misdescribes Quinn's testimony. All that Quinn stated that even remotely supports Morales' claim is that when he [Quinn] very briefly patted down Morales in the apartment, he failed to detect anything "hard." Trial Tr., 1/5/98, at 146. That testimony by no means contradicted Detective Delli–Pizzi's explicit

---

Taborda, had been arrested on April 23, 1998 in possession of more than 12 ounces of heroin and is presently incarcerated. Morales Sentencing Memorandum, May 4, 1998, at ¶ 5.

5. It should be noted that Morales' positions and arguments have been something of a moving target, continually shifting throughout these proceedings. *See, e.g.*, Tr. 4/22/98 Hearing, at 19.

6. For purposes of this discussion, the Court has rearranged the order of the four points from the order set forth in Morales' affidavit.

7. During his testimony at the March 31 hearing, Morales did provide some particularity to this charge by identifying some of the derogatory terms he alleges Mr. Herrmann used. Tr. 3/31/98 Hearing, at 22.

8. Nowhere in his affidavit, his in-court testimony, or elsewhere does Morales deny his guilt on the primary charge against him, *i.e.*, possession with intent to distribute. The absence of such an allegation is a factor for the Court to consider in deciding whether to grant a defendant's motion to withdraw his plea. *See, e.g.*, *United States v. Rodriguez*, 968 F.2d 130, 141 (2d Cir.1992).

testimony that, on a more extended search, he found two bullets in Morales' pockets, Trial Tr. 1/6/98. at and hardly warranted Mr. Herrmann in "preventing" Morales from pleading guilty to the ammunition charge that Morales was perfectly able to allocute to. Moreover, it is not at all clear how it is within the province of defense counsel to "prevent" a defendant from pleading guilty in these circumstances, when a defendant is prepared to allocute to every essential element of the charge; indeed, to have done so might itself have arguably constituted ineffective assistance of counsel, especially where, as noted, addition of the ammunition count adds nothing to the guideline calculation of the offense level. The Court also notes that during his allocution, Morales stated that he had a full opportunity to discuss every aspect of the matter with Mr. Herrmann, including his decision to go forward with his guilty plea, and that he was satisfied with Mr. Herrmann's representation. Tr. 1/9/98 Plea Allocution, at 710.

■ Fourth and finally, Morales alleges that "Mr. Herrmann failed to follow through on information about Agent [*sic*] Louis Delli-Pizzi that would have made him out to be both incredible and unreliable as a witness based on law enforcement officials' opinions of him as a less than truthful individual." Morales Aff. at ¶ 2.A. In further support of this contention, Morales testified at the March 31 hearing that at a conference in Mr. Herrmann's office with Morales "about a month before trial," Mr. Herrmann "pulled out some papers and he said, I have letters from district attorneys that put this man into perjury because of his testimonies, and that he is always telling lies." Tr. 3/31/98 Conference, at 17.[9] Morales also testified that when he raised this matter with Mr. Herrmann during trial, "[Mr. Herrmann] stated that the District Attorney didn't want to come forward and testify." Morales said that when he asked Mr. Herrmann to subpoena the district attorney(s) in question,

Herrmann "said it wasn't right, if they didn't want to testify, it wasn't for him to force them." *Id.* at 18.

■ This claim of supposedly ineffective assistance of counsel is essentially contradicted by the representation that Mr. Herrmann made at the suppression hearing to the effect that he was withdrawing his motion to review Delli-Pizzi's personnel record because "I realize there is no specific basis for taking up the Court's time." Tr. 11/10/97 Hearing, at 4. This, moreover, in no way inhibited Herrmann from undertaking a thorough cross-examination of Delli-Pizzi, as he did both at the suppression hearing and at the trial. In any case, even assuming, *arguendo*, that Herrmann had a basis for subpoenaing one or more district attorneys to testify (if they would) as to their doubts about Delli-Pizzi's credibility based on other cases, it is unlikely such testimony would have been admitted. *See* Fed.R.Evid. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility,...may not be proved by external evidence."). At most, these reluctant witnesses might have been called as negative character witnesses, *cf.* Fed R. Evid. 608(a), a tactic that would have opened up a far-ranging inquiry of uncertain results. The decision of experienced defense counsel not to call unwilling witnesses in a risky effort to collaterally challenge the credibility of one of the Government's witnesses is a matter of trial tactics that will not support a claim of ineffective assistance of counsel absent far more extreme circumstances than here presented. *See United States v. Nersesian*, 824 F.2d 1294, 1320–21 (2d Cir.1987). *See also, e.g., Leaks v. United States*, 841 F.Supp. 536, 545 (S.D.N.Y.1994), *aff'd* 47 F.3d 1157 (2d Cir. 1995), *cert. denied* 516 U.S. 926, 116 S.Ct. 327, 133 L.Ed.2d 228 (1995). Morales has made no showing that the (alleged) decision of Mr. Herrmann not to call the (unidentified) witnesses was unreasonable in light of the circumstances of this case.[10]

---

9. The affidavit of Morales' wife repeats this allegation. Colon Aff. at ¶ 2.

10. The weakness of Morales' allegation is further demonstrated by the fact that, after first asserting (without any evidentiary support) that Herr-

mann's failure to call the alleged district attorney witnesses was the result of Herrmann's desire not to jeopardize personal and professional relationships with these unidentified persons, Colon Aff. and Memorandum at ¶¶ 4–5, Morales' counsel, at the last hearing on this matter, switched

In addition, Morales has not even attempted to make a showing that, in light of all the trial testimony and the advantageous conditions offered in the plea agreement, Mr. Hermann's advice was deficient. *See Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Further, neither in his affidavit, his March 31 testimony, nor the submissions of his post-trial counsel has Morales made any claim at all that there is a reasonable probability that, but for Mr. Herrmann's decision not to pursue the attack on Detective Delli–Pizzi's credibility, Morales would have insisted on continuing with the trial. *Id.,* 474 U.S. at 59. *See also United States v. Torres,* 129 F.3d 710, 716–717 (2d Cir.1997).

For all the foregoing reasons, defendant Morales' motion to withdraw his guilty plea is denied. As counsel were previously notified, the sentencing of Mr. Morales will go forward on May 7, 1998 at 12:30 P.M.

SO ORDERED.

tactics and alleged (with equal absence of evidentiary support) that it was the result of a fee

dispute between Herrmann and Morales. Tr. 4/22/98 Hearing, at 18–19.